CITY OF JACKSON *v.* ASHLEY.

(In Banc. Dec. 9, 1940.)

[199 So. 91. No. 34431.]

**W. E. Morse,** of Jackson, for appellant.

**W. T. Horton,** of Jackson, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellee, Miss F. E. Ashley, filed a petition in the circuit court for a writ of mandamus against the City of Jackson. The appellant, the City of Jackson, Mississippi, appeared in that court and filed a demurrer to the petition, which was overruled. Thereupon, the City of

Jackson declined to plead further, final judgment was entered directing the writ to issue, and appeal is prosecuted from the final judgment.

According to the petition, Miss Ashley was the owner of Lot 2, Block 244, Country Club Place in the City of Jackson, Mississippi. The Country Club is a subdivision made by the Jackson Developing Company. That company incorporated in its deeds the following restriction: "It is agreed that all the foregoing property shall be owned by white people only, and shall be used for residential purposes only. It is stipulated and agreed that if a residence be built on said lot, the same shall set back at least 25 feet from the margin of the street on which said lot fronts, and shall cost not less than $4,000.00, exclusive of wiring and plumbing, and no other building shall be erected on said lot closer than 100 feet from the margin of the street on which said lot fronts." On the 12th day of March, 1930, the said Jackson Development Company conveyed the above-mentioned lot to Mitchell Robinson containing the above-quoted limitation. On the 21st of June, Mitchell Robinson conveyed the said lot to I. Lehman, and R. B. Ricketts, trustee. Thereafter, on the 10th day of July, 1930, Lehman and Ricketts conveyed that lot to W. D. Mullen. Neither of these deeds made any reference to the limitation as to building restrictions.

On the 18th day of September, 1933, this lot was sold by the City Tax Collector of Jackson to the City of Jackson for the city ad valorem taxes for the fiscal year 1932. The sale was according to law. Said lot was not redeemed, and the City of Jackson became the owner of the lot under said tax sale. Subsequently, in 1937, Mullen, owner of the lot at the time of the assessment and sale for taxes, executed a quitclaim deed to the City of Jackson to the lot. On the 17th of August 1940, the City of Jackson conveyed this lot to the appellee, Miss Ashley, in which deed there was no limitation or restriction.

On the 30th day of August 1940, Miss Ashley submitted plans and specifications for the erection of a residence on said lot for a house that would cost $2,580, with wiring of $70 and plumbing of $350, making a total cost of about $3,000, and requested a permit to erect such a building. This was done in accordance with requirements of the building ordinances of the City of Jackson. The building supervisor, in a letter to Miss Ashley, declined to issue the permit and gave as the sole reason that the house must be of the value of $4,000, exclusive of plumbing and wiring, as the original deed from the Jackson Development Company to Mitchell Robinson contained this requirement. However, the map and plans filed by the development company of the proposed subdivision, according to law, contained no reference to these limitations recited in the deed mentioned above.

The demurrer to the bill was to the effect that the building limitations contained in the original deed were binding upon the City of Jackson and all subsequent purchasers. The position of the appellee in this case is that by virtue of Section 3273 of the Mississippi Code of 1930, a sale for taxes eliminated and extinguished the restrictions in the deed. The applicable part of said statute is, as follows: ". . . and such conveyance [tax sale deed] shall vest in the purchaser a perfect title with the immediate right of possession to the land sold for taxes . . ."

In the case of Thornton v. Natchez, 88 Miss. 1, 41 So. 498, 500, Judge Calhoon quoted with approval the language of the U. S. Circuit Court of Appeals, 5 Cir., 129 F. 84, as follows: "There is nothing averred in the bill from which we could gather that the grantors intended that the land should be maintained as a public burying place literally in perpetuity, and without regard to the necessities and welfare of all the generations which were to follow. In the absence of any declaration of such an intention, and of anything in the grant from which it could be reasonably inferred, we are to conclude that the

grantors meant that the land should be used for the purposes for which they desired it to be used, as long as it was right and proper to do so, in view of the nature of the grant and of its purposes.'' It will be observed that the case does not deal with the question presented here, —the effect of the sale of land with restrictions placed in the deed by a remote vendor, and its subsequent sale and conveyance for ad valorem taxes.

Our attention is called to 14 Am. Jur., Sec. 300, at page 646, which states: ''Effect of Tax Sale.—A restrictive covenant or negative easement is not extinguished by a tax sale of the premises, though such sale operates to give to the purchaser a title free of encumbrances. However, there is some difference of opinion as to this.''

The restriction we are dealing with here is a negative limitation. The language of our statute as to the effect of a tax sale deed is perhaps as broad and strong as could be employed and not encumbered by any ambiguity, which is not the case with similar statutes of other states which have come under our observation. In other words, the deed, under Section 3273, vests a perfect title in the purchaser. If this negative limitation is to be held to control and be paramount to the tax sale deed, then, at a glance and without hesitation, it must be said that there would be no perfect title. If it be said that the limitation is a property right reserved by the remote grantor, as in this case, and that it cannot be deprived of it without due process of law, then, to that extent, our statute vesting a perfect title would be nugatory. We think the better rule is that where the land as a whole is assessed, as it is in the City of Jackson and in the State of Mississippi, the valid assessment and valid sale thereof operated to carry all of the title and all of the property therein, which was assessed and sold, and any other construction would be to create confusion in our whole scheme of ad valorem taxation of land.

In Alamogordo Improvement Co. v. Hennessee, 40 N. M. 162, 56 P. (2d) 1127, that court held the statute

provided that the tax should vest in the purchaser at tax sale a perfect title in fee simple; and that a tax sale created a new and paramount title, clear of all prior liens and encumbrances of every character, so that the possibility of reversion, on account of the violation of a covenant contained in a deed prohibiting the manufacture and sale of intoxicating liquors, created a negative limitation, and an action by the grantor to forfeit the property for such violation could not be maintained. Of like effect is the case of Hunt v. City of Boston, 183 Mass. 303, 67 N. E. 244, where a sale of land for taxes was held to extinguish an outstanding right, license and permission to enter upon the land, at any and all times for a specified number of years from the date of the deed granting such right, for the purpose of removing gravel.

We think this view is fortified by the views of our own court relative to the assessment and sale of land for taxes. In the following case contingent remainders are extinguished by such sale because it devolves on all persons in any way interested to see that such taxes are paid. Hazlip v. Nunnery (Miss.), 29 So. 821, not officially reported.

In the case of Gully v. Newman Lbr. Company, 176 Miss. 48, 164 So. 891, 168 So. 258, it was held that the approval by the board of supervisors of the original assessment of land as uncultivatable, with no land appearing thereon as timbered land, was an adjudication that land contained no taxable timber, precluding a subsequent assessment of timber for back taxes.

Our attention is called to the case of Howie v. Panola-Quitman Drainage Dist. et al., 168 Miss. 387, 151 So. 154. In that case it was simply held that Section 3273 vesting a perfect title in the purchaser was subject to the exceptions thereto, and qualified by other provisions creating a lien, such as Sections 3120, 3249, 3256, 3264, 3273, 4448 and 4488. The main point there being that although there had been a valid assessment and sale of land for ad valorem taxes, the assessments authorized by law of so-

called "drainage taxes" was not extinguished by said assessment and sale. In other words, the assessment for drainage taxes was an exception created by the statute.

We are of the opinion that the negative limitation contained in the deed of the remote vendor was extinguished by the valid assessment and valid sale of the land in its entirety for taxes. We reach this conclusion under the statute here relied upon,—that the tax in the case at bar was levied upon the land as a whole and not in part, without regard to the various interests that may have been carved out of it. Another case would be presented if the tax had been levied upon some interest in the real estate less than the whole. See annotations and notes to the case of Tide-water Pipe Company v. Bell, at page 1523 of 40 A. L. R. for a discussion of both sides of this question.

We have decided the precise question presented to us in the case at bar eliminating from view all others, including the question of whether or not such a negative limitation as we have herein continues in perpetuity. This limitation contains no reverter clause. That being true, who if any one may enforce it?

Affirmed.