**Joe Edward KWONG, Individually and as Administrator of the Estate of Joe Bak, et al. and Mrs. Sarah Marie Breedlove, Individually and as Guardian of the minor children, Mary Elizabeth Bak and Joe Bak, Jr., Appellants,**

v.

**OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Appellee.**

No. 17899.

United States Court of Appeals
Fifth Circuit.

Dec. 30, 1959.

On Rehearing Jan. 26, 1960.

692

Herman W. Mead, Ted Musick, Houston, Tex., Musick, Musick & Heath, Houston, Tex., for appellant.

Finis E. Cowan, Jr., Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This action was brought by appellee Occidental Life Insurance Company of California seeking a declaration that a twenty-payment life insurance policy issued by it upon the life of Joe Bak was rendered void by false representations made in the application for the policy.[1] The defendants, appellants here, were the administrator of the estate of Bak and his beneficiaries. With the complaint Occidental paid into court all premium payments which it had received, tender thereof having been made to the appellants prior to the beginning of the action.

Appellants answered with a general denial of the charges of false representation and averred that the facts charged in the complaint were known, or could have been known, by appellee before the issuance of said contracts or, in any event, on October 4, 1956 when it caused a further medical examination of insured to be made; and that, under said facts, appellee was barred from recovery by waiver, estoppel or laches. Based

---

1. Embraced in the action also is a like prayer with respect to a rider attached to a policy taken out by the said Joe Bak on the life of his son, Joe Bak, Jr., the rider providing for waiver of premiums on that policy in event of the death of Joe Bak, Sr.

upon the same grounds, appellants filed a "Crossclaim"[2] against Occidental for the face of the policy, with interest, penalties and attorney's fees, and for the enforcement of the rider mentioned in Note 1 supra.

After limiting and defining the issues upon pretrial conference at which many of the facts were stipulated, the court below, sitting without jury, proceeded to an extended hearing and found that the facts were as contended for by appellee, its detailed findings of fact resolving in appellee's favor every issue raised by the pleadings and its conclusion being that, under the law, appellee was entitled to the relief sought. The appeal is from the judgment entered pursuant thereto.[3]

Upon receipt of the application dated April 10, 1956, the medical examiner of Occidental made a routine examination of insured, which was followed by two additional physical examinations. Sometime between the date of the original application and June 4, 1956, Occidental declined to issue a policy at standard rates, but offered to insure Bak as a substandard risk. The policy offered carried a premium of $487.30 instead of the standard premium of $426 per year. The reason for the rating-up was that Occidental had discovered from its medical examinations and from information it obtained from a medical information bureau, that the applicant's blood pressure was elevated. Bak accepted the rated-up policy, making an amended application dated June 4, 1956. The policy was delivered bearing the date of May 23, 1956 and the original application of April 10 was a part of it. Bak died January 4, 1958 of what the death certificate described as cerebro-vascular accident and hypertensive heart disease. The court below had before it the depositions

---

2. Treated herein as a compulsory counterclaim under Rule 13(a), F.R.Civ.P., 28 U.S.C.A.

3. The court's ideas had been summarized in a letter to the attorneys expressing its general opinion upon which the more detailed findings were rested.

"On consideration of the evidence, the exhibits, and the briefs heretofore filed, I am of the view that the plaintiff insurer is right upon the facts and the law, and is entitled to the relief prayed for.

"I find that the deceased Bak, in collusion with the agent Ong, wilfully and deliberately made the false statements which appear in the application, knowing of their falsity, with the intent to mislead the insurer, and for the purpose of securing the issuance of a policy which he knew likely would not issue if the insurer was advised of the truth. I find that the insurer relied upon these answers, was misled under the circumstances, and in fact issued the policy, which it otherwise would not have done.

"I am not able to accept the view that the Dossett case applies or excuses the fraudulent misrepresentations. I concur in the principle which that authority supports, namely that where one knows that certain statements made to him are false, he cannot contend that he relied thereon. In the present case, however, it seems to me the most that can be said on behalf of the defendant's contention that the insurer knew of the falsity of Bak's statements is that it knew, from the information available from the "Information Service" that Bak at one time had shown an elevated blood pressure reading. Additionally, it might be said that the insurer likewise knew that Bak had applied for other insurance, as this was the only source of such information. But it is not shown that the insurer knew that the other application had been turned down, nor is there any suggestion that the insurer had any information that any of the other answers were false.

"Nor am I able to adopt the view that the fact the policy issued was not a standard policy, but was written at an increased premium, excuses the fraudulent misrepresentations. The insurer had the benefit of the several blood pressure readings taken by Dr. Pratt, and of the one additional reading shown by the "Information Service." As I understand the medical testimony, these readings would indicate an abnormally high, but not necessarily dangerous condition. The insurer and the deceased might, if they saw fit to do so, enter into the insurance contract at an increased premium by reason of that circumstance. From this, it does not follow that the insurer still was not entitled to, and did not, rely on the many representations made by the deceased, which now are shown conclusively to be false."

of a half dozen witnesses and oral testimony of about the same number.

The specific answers contained in Bak's application which the court found to be false are summarized in the margin.[4] The court found that Bak had been treated by two doctors in Pine Bluff, Arkansas during the months March—October, 1952 for high blood pressure and had taken medication therefor, and had spent some time in a hospital; that he had undergone like treatment at the same place in February—March, 1954, at which time he took medication to reduce his blood pressure, which was quite high, and that he had experienced symptoms of headache, dizziness and nausea; that in 1953, a life insurance company had refused to issue a policy applied for by him; that when the application here involved was made, insured was negotiating with another company which refused to issue him a policy. The court found that these misrepresentations had been made by insured wilfully and deliberately, with knowledge of their falsity, and with the intention of misleading the insurer, that they were material to the risks assumed, and were relied upon by the insurer, which issued the contracts upon the faith of the statements in the application; and, further, that the insured had colluded with the agent of the company to procure the policy and the rider to be issued when they both knew that Bak was not entitled to insurance.

Appellants attack the findings of the court below as being unsupported by the evidence. They rely particularly upon the contention that Occidental did not issue the contracts in reliance upon the application, but upon its own examinations of Bak and information it received from other sources. They point out that the company's medical examiner made physical examinations, including heart readings, on April 10, May 8, and May 15, 1956, and that before the issuance of the contracts it obtained information from a medical information bureau that Bak had high blood pressure.

The trial court was convinced by the evidence that the several examinations made by the company's physician and the information it received from the Bureau was effective to put the company on notice only that insured's blood pressure was somewhat high, but not that it was dangerously high or was such as to render one of Bak's age uninsurable; that the information obtained by the company justified its classifying Bak as a substandard risk and in offering to insure him at an advanced premium, but that the information was not sufficient to warrant rejection of the application containing the answers upon which the court had found that the company relied. The court considered the Texas cases relied upon before him and stressed by appellants before us.[5]

The questions presented by this appeal were before us and were carefully considered in the recent case of Roosth v. Lincoln National Life Insur-

---

4. a. That no company had ever declined or postponed his application for insurance or modified it as to kind, rate or amount; b. that no company had failed to issue a policy upon any application made by him; c. that he had not consulted a physician at any time; d. that he had not, during the last ten years, suffered any pain or discomfort in the chest or shortness of breath, e. had not suffered from dizziness or fainting spells, f. had not suffered from any illness or disease whatsoever or, g. had any health examinations or check-ups within that period; or, h. had any advice or treatment by a physician; or, i. received any treatment or observation in any clinic or health resort or hospital during the ten year period; and j. that he had not been required to restrict his diet in any way within the past five years.

5. Appellants rely upon the Texas cases of Dossett v. Franklin Life Insurance Co., Tex.Com.App.1925, 276 S.W. 1097; Wortman v. Young, Tex.Com.App., 1921, 235 S.W. 559; Holt v. Manley, Tex.Civ. App.1940, 146 S.W.2d 773; John Hancock Mutual Life Ins. Co. v. Brennan, Tex.Civ.App.1959, 324 S.W.2d 610; and Great Southern Life Insurance Co. v. Doyle, Tex.Com.App.1941, 151 S.W.2d 197.

ance Co., 5 Cir., 1959, 269 F.2d 171.[6] We recognized the heavy burden which lay upon the insurer to establish its case under the Texas statutes and decisions which are stressed by appellants here. We concluded that it had not been established that the "evidence admits of no other conclusion than" the one adopted by the trial judge in that case in entering judgment upon directed verdict in favor of the insurance company. In other words, we held that the evidence on all material issues was of such character and quality that reasonable men might reach different conclusions with respect to it and that, therefore, the case ought to have been submitted to the jury for determination of the facts. The same law as we considered in that case, supplemented by the foregoing decisions relied upon by appellants, requires, we think, that we hold that the evidence now before us developed issues of fact to be decided by the trier of the facts. All of the evidence and the contentions of the parties were placed fully before the trial court, and it determined the facts on all issues in favor of appellee. Our duty is to test the record whether it contains substantial credible evidence of such character as to support the court's findings of fact. In other words, it is our duty to accept the findings of fact made by the court below, unless they are clearly erroneous.

After a careful reading of the record we are unable to conclude that its findings were clearly erroneous. There is credible evidence in the record to sustain all of the fact-findings. This being true and it being clear that the law was correctly applied to the facts, the judgment of the district court is

Affirmed.

## On Petition for Rehearing.

Appellants earnestly insist in their petition for rehearing that our opinion of December 30, 1959 erroneously states that the trial court considered the case of John Hancock Mutual Life Insurance Co.

v. Brennan, Tex.Civ.App., 1959, 324 S.W. 2d 610, 614. This case is listed in Footnote 5 of our opinion as being among those upon which the appellants relied in presenting the case to us. We have no way of knowing whether the court below considered the Brennan case or not. It was decided April 29, 1959, about four weeks before the letter opinion of the trial judge (Footnote 3), and more than seven weeks before its Findings of Fact and Conclusions of Law and its Judgment were entered on June 22, 1959.

We did give full consideration to the Brennan case, and we did not, and do not, consider that it conflicts with our decision of the present case. The insurance company sued Ann Brennan to cancel a policy upon the life of her husband who died a few months after the policy was issued. Its suit was based upon false representations in the application, just as is the case here. The error assigned by the company there was based upon the refusal of the trial court to instruct the jury to find in its favor upon its contention that the evidence supported its charges of fraud *as a matter of law*. Seventy-seven special issues were addressed to the jury in Brennan and the jury found in favor of the insured in answering some of them, and in favor of the insurer as to others.

The crucial jury finding upon which the trial court entered judgment against the insurance company in Brennan was 'that the insurer actually did conduct an independent investigation, and that it relied solely upon that investigation." The evidence detailed in the opinion of the Court of Civil Appeals supports that finding and the Court of Civil Appeals, therefore, affirmed judgment against the insurer.

The opposite is true here. As our opinion makes clear, the finder of the facts resolved the crucial issues in favor of the insurance company. He held that these findings were not clearly erroneous and we adhere to that holding.

Denied.

6. And cf. New York Life Ins. Co. v. Strudel, 5 Cir., 1957, 243 F.2d 90, and

Lumbermen's Mutual Casualty Co. v. Klotz, 5 Cir., 1958, 251 F.2d 499.