# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01942-SCT

*H. POWER HEARN*

*v.*

*AUTUMN WOODS OFFICE PARK PROPERTY OWNERS ASSOCIATION, A
MISSISSIPPI CORPORATION, JOHN C. TRACY, THOMAS L. GOULD, JR. a/k/a TIM
GOULD, DAVID S. BUTLER, SR., LEWIS W. WEST, III, AND LARRY PURVIS,
INDIVIDUALLY, ERG INVESTMENTS OF MISSISSIPPI, INC., A MISSISSIPPI
CORPORATION, SOUTHERN GUARANTY INSURANCE COMPANY, AN ALABAMA
CORPORATION, COLLEGE INVESTMENT COMPANY, G. M. LUCKETT AND L. L.
EATON*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/1998 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DALE H. McKIBBEN |
| ATTORNEY FOR APPELLEES: | CLAY L. PEDIGO |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 12/16/1999 |
| MOTION FOR REHEARING FILED: | 01/11/2000; denied 3/16/2000 |
| MANDATE ISSUED: | 3/23/2000 |

## BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.

## BANKS, JUSTICE, FOR THE COURT:

¶1. Here we consider for the first time whether an easement, created solely by a declaration of covenants filed in conjunction with a subdivision plat, is extinguished by a tax sale for ad valorem taxes. We conclude that it is not and, accordingly, we affirm the judgment of the chancery court.

### I.

¶2. Appellee, Autumn Woods Office Park Property Owners Association was created on or about December, 1986 for purposes of holding title to the common areas of Autumn Woods and maintenance and enforcement of the Declaration of Covenants and Restrictions of Autumn Woods Office Park (hereinafter "declaration" or "Covenants"). The other appellees, are owners of Lots 1,2,3,4 and 5 of Autumn Woods Office Park, Phase 4, Part I, a commercial office park. Autumn Woods was developed in several phases by Joseph Elliot Joseph and his company, Autumn Woods Development Company. (Hereinafter the appellees may be referred to collectively as "Autumn Woods.")

¶3. There were three Declarations of Covenants and Restrictions filed pertaining to the Autumn Woods Office Park Phase 4, Part I. In 1988, the Third Declaration of Covenants, which designated the common

areas for Autumn Woods Office Park, Phase 4, Part I as being Lots 6 and 7, was amended and filed. The purpose of the Third Declaration was to bind the property with the Covenants. The Third Declaration of Covenants states in part:

> The property designated as Lots 6 and 7 on the plat of Autumn Woods Phase 4, Part I, shall constitute "Common Area" as that term is defined and used in the covenants. All members shall derive an easement of enjoyment and access in and to the Common Area, for among other purposes, ingress, egress, maintenance and utilities. These easements shall be appurtenant to and shall pass with the title to any site subject to the Covenants, as amended. **All owners of any site in Autumn Woods Office Park, Part II shall have an easement for ingress and egress, including parking, over and across Lot 7 of Autumn Woods, Phase 4, Part I, which easement shall be perpetual and irrevocable**.

(emphasis added).

¶4. On August 31,1992, L. Glynn Pepper, Hinds County Tax Collector, sold Lot 7 to Appellant, H. Power Hearn, Jr. ("Hearn") for 1991 ad valorem taxes. On July 21, 1995, Alice James, Hinds County Chancery Clerk, executed a tax deed conveying Lot 7 to Hearn, and he has since continuously claimed ownership.

¶5. On April 8, 1996 , Hearn offered to sell Lot 7 to Autumn Woods Association or to any individual lot owners adjoining Lot 7. Hearn later forbade the lot owners from entering or remaining upon Lot 7 and posted "No trespassing" signs thereon. On July 3, 1996, Hearn wrote to the lot owners informing them that he would pursue civil and criminal penalties for unauthorized entry on his property. On July 9, 1996, Autumn Woods, commenced this action in Hinds County Chancery Court to enforce the parking easement. On July 29, 1996, the chancery court preliminarily enjoined Hearn from interfering with parking on Lot 7. Autumn Woods requested a declaratory judgment stating that Lot 7 is subject to the Covenants Autumn Woods also sought related injunctive relief, compensatory damages, and their attorney fees.

¶6. On November 5, 1996, Hearn counterclaimed for declaratory judgment stating that any and all restrictive limitations and covenants were extinguished as to Lot 7 by virtue of the tax deed. Hearn also sought damages for civil trespass, unjust enrichment and dismissal of the amended complaint with all costs assessed against Autumn Woods property owners.

¶7. On July 28, 1997, the chancery court held that the recorded Declaration of Covenants and Restrictions of Autumn Woods Office Park of Phase 4, Part I was not extinguished by the tax deed conveyance. The chancery court further stated that there was no cognizable dispute at bar between the parties concerning the title to Lot 7. The chancery court concluded by stating that Hearn is permanently enjoined from restricting free and unencumbered use of Lot 7 as a common area for ingress, egress and parking purposes as provided in the subject plat of Autumn Woods Office Park and the Declaration of Covenants and Restrictions of Autumn Woods Office Park recorded in the First Judicial District of Hinds County. Hearn appealed the final judgment of the chancery court.

## II.

¶8. The question here presented is whether a tax deed, confirmed or unconfirmed, extinguishes duly filed and recorded easements applicable to common areas in a platted and recorded subdivision. A preliminary question is whether the easement here was properly perfected. With questions of law, the scope of review

is de novo. ***Rawls v. Parker***, 602 So. 2d 1164, 1167 (Miss. 1992) (citing ***Planters Bank & Trust Co. v. Sklar***, 555 So. 2d 1024, 1028 (Miss. 1990)).

**A.**

¶9. Hearn argues that the protective and restrictive covenants, which contain the grant of the easement, are void because they were not effectively promulgated. He further contends that Mississippi does not have a statute or a case that describes the process for promulgating or regulating such covenants. Hearn cites to some Mississippi cases dealing with covenants ***Kilpatrick v. Twin States Realty Co.,*** 193 Miss. 599, 10 So. 2d 447 (1942); ***Carter v. Pace***, 227 Miss. 488, 86 So. 2d 360 (1956); ***Perry v. Bridgetown Community Ass'n, Inc.***, 486 So. 2d 1230 (Miss. 1986); ***Griffin v. Tall Timbers Dev., Inc.***, 681 So. 2d 546 (Miss. 1996). He argues that these cases contain virtually identical paragraphs stating that valid and enforceable covenants result when the following four steps are followed:

 a. The subdivision plat is filed.

 b. There is a recording of declaration of covenants.

 c. There is an incorporation of an association of property owners with bylaws

 d. The sale of lots by deeds that confirm the intent and validity of the first three steps.

In ***Perry*** and ***Griffin*** this Court upheld covenants and amendments, and declared that a homeowner's association may be accomplished in several ways, but the documentation for the formation of a homeowners association involves those four steps. ***Perry,*** 486 So. 2d at 549; ***Griffin***, 681 So. 2d at 1232. Of course, step c above has application only where the formation of an association is at issue.

¶10. Here, Autumn Woods' predecessor in title has both filed a subdivision plat and recorded a Declaration of Covenants and Restrictions in Hinds county. Nevertheless, Hearn submits that the protective covenants are void because there is no specific reference to the Declaration of Covenants and Restrictions in any of the lot owners' deeds, including Hearn's tax deed.

¶11. While we have not been explicit on this issue, the prevailing law in our sister states rejects Hearn's contention. Florida, for example, has held that when an owner of a tract of land subdivides his land into lots, and designates certain portions to be parks, playgrounds or similar facilities, and actually sells lots with reference to the plat, he becomes bound to his grantees by the plat and the representation thereon. ***McCorquodale v. Keyton***, 63 So. 2d 906, 910 (Fla. 1953).

¶12. This Court has held that a covenant must meet the following three conditions to run with the land: (1) the covenanting parties must intend to create such covenant; (2) privity of estate must exist between the person claiming right to enforce the covenant and the person upon whom burden of covenant is to be imposed; and (3) the covenant must "touch and concern" the land in question. ***Vulcan Materials Co. v. Miller***, 691 So. 2d 908, 913 (Miss. 1997).

¶13. Here, the developer, Joe Joseph, intended the covenant to run with the land as evinced by the language in the Declaration of Covenants which states , "[T]hese easements shall be appurtenant to and shall pass with the title to any site subject to the Covenants, as amended. All owners of any site in Autumn Woods Office Park, Part II shall have an easement for ingress and egress, including parking, over and

across Lot 7 of Autumn Woods, Phase 4, Part I, which easement shall be perpetual and irrevocable." The privity of estate was established when Autumn Woods Development Company, Inc., owned by Joseph, sold lots one through five to the owners. At that time, Autumn Woods Development Company had the burden of the covenant and the lot owners had the right to enforce it. Black's Law Dictionary, 1080 5th ed. (1979), defines "privity of estate" as:

> Privity of estate is that which exists between lessor and lessee, tenant for life and remainderman or reversioner, etc., and their respective assignees, and between joint tenants and coparceners.

Also, the covenant touches and concerns the land.

¶14. A covenant that runs with the land is enforceable against a subsequent owner, even if that covenant is not referenced in the subsequent owner's deed. *Mendrop v. Harrell*, 233 Miss. 679, 691-92, 103 So. 2d 418, 425 (1958). In *Mendrop*, this Court, in addition to holding that a covenant running with the land was created by the deed considered in that case, also held that a grantee, subsequent to the deed creating a covenant running with the land, takes the property conveyed subject to the burden of the covenant though the covenant was not precisely set forth in the deed to him. *Id*. at 692; 103 So. 2d at 425. Because the covenant runs with the land, it is not void merely because it is not referred to in any deed conveyed to subsequent owners.

¶15. Clearly, Hearn had constructive notice of the protective covenants. This Court has held that a prior recorded deed gave a subsequent grantee constructive notice of that deed and its provisions. *Mississippi State Highway Comm'n v. Cohn*, 217 So. 2d 528, 533 (Miss. 1969). Here, the protective covenants were previously filed in the Declaration of Covenants before any lot owners were granted their deeds. A plat was filed in connection with the declaration, and the lots were sold by reference to the plat. Like *Cohn*, because the protective covenants were recorded prior to the deeds being granted, those grantees had constructive notice of those covenants.

¶16. Hearn's claim in this regard lacks merit.

**B**.

¶17. Hearn argues that the Covenants should also be held invalid because of public policy. Specifically, Hearn argues that the easement found in the Covenants would last forever. Autumn Woods' Amendment to Declaration of Covenants and Restrictions states:

> The property designated as Lots 6 and 7 on the plat of Autumn Woods Phase 4, Part I, shall constitute "Common Area" as that term is defined and used in the covenants...All owners of any site in Autumn Woods Office Park, Part II shall have an easement for ingress and egress, including parking, over and across Lot 7 of Autumn Woods, Phase 4, Part I, which easement shall be **perpetual** and **irrevocable.**

(emphasis added). Hearn further insists that it is a well established rule that restraints on alienation are not favored and are strictly construed. Hearn cites to *Sanders v. Hicks*, 317 So. 2d 61 (Miss. 1975), which states that "the general common law rule is that exclusion of property from the channels of commercial development for extended periods of time is a public evil." *Id.* at 63, *overruled by*, *First Nat'l Bank v. Caruthers*, 443 So. 2d 861, 864 (Miss. 1983). Here, Hearn suggests that the language "which easement shall be perpetual and irrevocable" in the Amendment to Declaration of Covenants and Restrictions, violates

public policy.

¶18. A permanent easement does not violate public policy. First, an easement is not a restraint on alienation, as argued by Hearn, but an interest in land. *See **Jenkins v. McQuaid***, 153 Miss. 185, 193, 120 So. 814 (1928)(A continuous easement is no less than an "interest in land."). Moreover, there is substantial authority supporting the use of permanent easements. *See* 25 Am Jur 2d. *Easements and Licenses* § 108 at 679 (1996) (An easement may be created for a permanent duration); 28A C.J.S., *Easements* § 116 at 299 (1996) ("An easement may be conveyed for any length of duration, or for an unlimited duration...[w]here the instrument by which an easement is created expressly so provides that an easement will be permanent . . . .") (footnotes omitted). An easement is not void against public policy simply because it is irrevocable or permanent. Because the use of permanent easements is widely accepted, this permanent easement is not void because of public policy.

¶19. This part of Hearn's argument is without merit.

## C.

¶20. Hearn argues that the tax sale has negated the covenant. Alternatively, Hearn argues that if the tax sale has not negated the covenant, then the tax sale has conveyed all rights to Hearn the purchaser. Hearn suggests that the lot owners do not have a right to the easement for Lot 7, because they made no effort to pay any taxes on lot 7. Also, Hearn contends that the owners did not make any effort to have lot 7 assessed for themselves regarding taxation. Hearn argued, by cross complaint, that the tax sale and the patents issued in response thereto be confirmed in fee simple title to him. In support of his argument, Hearn cites to *City of Jackson v. Ashley*, 189 Miss. 818, 199 So. 91 (1940).

¶21. In *Ashley*, this Court held that the negative limitation contained in a deed of a remote vendor was extinguished by the valid assessment and valid sale of the land in its entirety for taxes. 189 Miss. at 825, 199 So. at 92. In that 1940 case, the Court stated:

> We think the better rule is that where the land as a whole is assessed, as it is in the City of Jackson and in the State of Mississippi, the valid assessment and the valid sale thereof operated to carry all of the title and all of the property therein, which was assessed and sold, and any other construction would be to create confusion in our whole scheme of ad valorem taxation of land.

*Id*. at 823, 199 So. at 92.

¶22. The chancery court rejected the applicability of *Ashley* in this case. The chancery court held that the issue in *Ashley* was that of a "negative limitation" that contained no reverter clause and not an easement. The chancery court further distinguished this case by observing that *Ashley* is grounded in the law of estates and lands, rather than the law of easements.

¶23. Autumn Woods argues that *Ashley* is distinguishable here as follows: the easements and covenants at issue benefit adjoining landowners; the easement runs with the land for specific time frames; the easement is subject to specific enforcement and modification procedures; and the easement runs specifically for the benefit of all properties in Phase 4, Part 1 of Autumn Woods Office Park Subdivision, i.e., ingress, egress, and parking. In addition, Autumn Woods cite to secondary sources that state that most jurisdictions have held that easements are not extinguished by tax sales. Holly Piehler Rockwell, Annotation, *Easement, Servitude or Covenant as affected by Sales for Taxes*, 7 A.L.R. 5th 187, 203 (1992); Restatement

(Second) of Property § 509(2) (An easement appurtenant is not extinguished by the sale and conveyance of the land subject to it for nonpayment of a tax assessed against such land).

¶24. The Court in *Ashley* specifically limited its holding to negative limitations, not easements. 189 Miss. at 823 & 825, 199 So. at 91, 92. Moreover in *Ashley*, this Court stated as follows:

> Our attention is called to 14 Am. Jur., Sec. 300, at page 646, which states: "Effect of Tax Sale.--A restrictive covenant or negative easement is not extinguished by a tax sale of the premises, though such sale operates to give to the purchaser a title free of encumbrances. However, there is some difference of opinion as to this."

*Id* at 823, 199 So. at 92.

¶25. While this Court has not held that an easement appurtenant is extinguished by a tax sale, most jurisdictions clearly state that one is not. *E.g., Arizona R.C.I.A. Lands, Inc. v. Ainsworth*, 515 P.2d 335, 336-37(Ariz. Ct. of App. 1973)(Statute says 'A sale of real property for delinquent taxes shall not extinguish any easement thereon or appurtenant thereto.' Also, the plaintiff was on constructive notice because the easement was recorded in a deed three years earlier); *Hendley v. Overstreet*, 318 S.E.2d 54, 55(Ga. 1984)( Tax sale did not extinguish easement in declaration of restrictive covenants where the lot owners' deeds made specific reference to the declaration of restrictive covenants that contained the easement.); *Smith v. Gwinett County*, 286 S.E.2d 739, 741 (Ga. 1982) (Statute states that easement is not extinguished by a tax sale); *Alvin v. Johnson*, 63 N.W.2d 22, 23 (Minn. 1954); *Casazza v. A-Allstate Abstract Co.*, 721 P.2d 386, 388 (Nev. 1986); *Tax Lien Co. v. Schultze*, 106 N.E. 751, 752 (N.Y. 1914); *City of Olympia v. Palzer,* 728 P.2d 135, 137 (Wash. 1986)(Easement upheld after tax sale because an easement is a right, distinct from ownership, to use in some way the land of another, without compensation, whereas a restrictive covenant limits the manner in which one may use his or her own land). *See also* Restatement (Third) Property § 509(2).

¶26. An easement is different from other encumbrances regarding tax sales. In an exhaustive review of the states on this issue, the D.C. Circuit succinctly explained:

> The reasoning of the authorities holding that the easement survives the tax deed is, briefly, that when an easement is appurtenant to a dominant estate it attaches to that estate, being carved out of the servient estate; that the value of the dominant estate is increased by the existence of the easement and in effect thus includes the value of the easement; that, when a tax is paid upon the value of the dominant estate determined in this manner, a tax has in effect been paid upon the easement; that the tax upon the servient estate is upon a value lessened because of the existence of the easement; that a sale for nonpayment of that tax ought to be a sale of the lessened estate; that 'account can be taken of an easement appurtenant without increasing the complication of the tax process'; and that therefore a tax sale of a servient estate should pass title to that estate subject to the easement.

*Engel v. Catucci*, 197 F.2d 597, 599 (D.C. Cir. 1952) (footnotes omitted & quoting Restatement, Property § 509, Comment d).

¶27. This reasoning is sound. We hold that an easement is not extinguished because of a tax sale.

**D**.

¶28. Hearn argues that the chancery court erred in not resolving the dispute of whether the value of the easement was included in the assessment lot 7 acquired by his tax deed. On July 28, 1997, the chancery court held all other issues of fact were held in abeyance pending the determination of whether an easement is extinguished by a tax sale. On June 23, 1998, the chancery court in its Memorandum Opinion stated, "This Court (Chancery Court) adopted the majority view that the easement does survive, provided the assessed values of the properties involved reflected the value of the easement." Hearn argues that the chancery court did not decide whether the easement was assessed in the value of the property. Hearn argues that he is now entitled to have those questions resolved.

¶29. The method for assessing the value of the lot has been held to be determinative on whether the easement survives a tax sale. *Tax Lien Co. v. Schultze*, 106 N.E. 751; *Hayes v. Gibbs*, 169 P.2d 781, 786 (Utah 1946). *See also Rockwell, supra,* 7 A.L.R. 5th at 203. Hearn contends that Autumn Woods, made no effort to protect themselves under Miss. Code Ann. § 27-35-51 (1995) (minerals, improvements, interests of public utilities and similar interests are separately assessed by tax assessor under this statute). Hearn argues that after the single assessment of lot 7 pursuant to Miss. Code Ann. § 27-35-49 (Supp. 1999) was completed, that assessment covered **all** interests in the lot. Hearn argues that his interest, bought from the tax sale, includes any adjunct easements or rights-of-way that the owners of Lots 1 through 5 claimed to Lot 7.

¶30. Autumn Woods suggests that Miss. Code Ann. § 27-35-49 is the more applicable statute to determine whether the easement was assessed in the value of Lot 7. Miss. Code Ann. § 27-35-49 states that land shall be appraised according to its true value. Miss. Code Ann. § 27-35-49 (Supp. 1999). Miss. Code Ann. § 27-35-50 (Supp. 1999) defines "True Value" as market value, cash value, actual value, and proper value. Autumn Woods assert that Miss. Code Ann. § 27-35-50(4) states that residential single family property and all other real property must be appraised according to "current use." Autumn Woods argue that the assessed value of Lot 7 included Lot 7's use as a common area because that was its current use at the time of valuation. They argue that the current use of Lot 7 was a parking lot for the adjoining lot owners and was assessed as such.

¶31. It was not Autumn Woods' responsibility to have their easement of Lot 7 separately assessed. Hearn cites to Miss. Code Ann. § 27-35-51 (1995) for the proposition that Autumn Woods must have an easement separately. Hearn has misconstrued the applicability of that statute. The pertinent language of Miss. Code Ann. § 27-35-51 is as follows:

> Whenever any buildings, improvements or structures, mineral, gas oil, timber or similar interests in real estate...or when any person reserves any right or interest... all such interests shall be assessed and taxed separately from such surface rights and interests shall be assessed and taxed separately from such surface rights and interests in said real estate, and shall be sold for taxes in same manner and with same effect as other interests in real estate are sold for taxes. . . .

This statute is not applicable to easements.

¶32. Autumn Woods are correct in asserting that the value of Lot 7 should be based on its current use pursuant to Miss. Code Ann. § 27-35-49. Here, Lot 7 is a parking lot that was being used by the adjoining lot owners. The comments from the tax purchase of Lot 7 describe the lot as "a portion of a parking lot to an office complex on Edgewood Terrace." The Declarations of Easements and Covenants were not examined by the tax assessor to determine the value of Lot 7. However, at the time of assessment, a

Declaration of Covenants and Restrictions (Third) was filed that states that the adjoining lot owners have "an easement for ingress and egress, including parking, over and across Lot 7." Viewing the current use of Lot 7 at the time of assessment, the lot was assessed for its true value as a parking lot used by adjoining lot owners.

¶33. Moreover, when there is no evidence to the contrary, the assessment for tax purposes may be presumed, as a matter of law, to include the value of the easement. *Arizona R.C.I.A. Lands, Inc. v. Ainsworth*, 515 P.2d at 338. *See also Engel v. Catucci*, 197 F.2d at 600; *Gowen v. Swain*, 10 A.2d 249, 252 (N.H. 1939); *Alamogordo Improvement Co. v. Prendergast*, 91 P.2d 428, 431(N.M. 1939); *Hayes v. Gibbs*, 169 P.2d at 786.

¶34. Hearn did not present evidence that the tax assessor did not include the easement in assessing the value of the land. Hearn merely suggests that Autumn Woods should have their easement separately assessed under a different statute. Hearn does not overcome the presumption, as a matter of law, that the assessor did assess the value of the land with the easement for parking.

¶35. This Court joins the majority of jurisdictions that hold that an easement appurtenant, such as the one before this Court, is not extinguished because of a tax sale, if that easement is properly assessed and included in the value of the property.

¶36. The chancery court's decision is affirmed on this issue.

### III.

¶37. Hearn contends that the chancery court should not have dismissed his counterclaim, cross-claim, and third-party claim. Hearn's claims were for both the confirmation of title of Lot 7 and other relief including the dissolution of temporary injunction, damages for unjust and unlawful issuance of injunction, and rent or other compensation for use made of Lot 7 by Autumn Woods property owners since July 21, 1995. Hearn argues that it was mandatory for him to file his counterclaim pursuant to MRCP 13. Hearn asserts that under *Fulgham v. Snell*, 548 So. 2d 1320 (Miss. 1989), he has the right and obligation to contest the right of the Autumn Woods property owners to use his land to which he holds a tax patent.

¶38. In *Fulgham*, this Court held that an appellant forfeited his claim by not asserting it as a counterclaim in the original action. *Id*. at 1323. Hearn claims that he asserted his right without waiving it, and the chancery court erred in not resolving it on the merits. Here, neither the chancery court nor Autumn Woods asserted that Hearn's counterclaim is not compulsory.

¶39. The standard of review of the chancery court's order to dismiss an action is the substantial evidence/manifest error standard. *Croenne v. Irby*, 492 So. 2d 1291, 1294 (Miss. 1986).

¶40. Here, the chancery court dismissed Hearn's counterclaims concluding that any joinder of additional parties, as would be required under Miss. Code Ann. § 11-17-19 (Supp. 1999) for confirmation of title, would be improper in this case and would only serve to cloud the issue rather than promote judicial economy and do complete justice. Also, the chancery court ruled that the counterclaim was improperly pled pursuant to M.R.C.P. 13 because there was no dispute against an "opposing party" with respect to ownership of title.

¶41. Autumn Woods assert no claim to the title of Lot 7. The chancery court further stated that Hearn's

cross-claim is improper pursuant to M.R.C.P. 13(g) because a cross-claim is properly brought against a "co-party" and Hearn is the only defendant. The fact that the counterclaim is mislabeled as a cross-claim does not warrant dismissal. A counterclaim that is mislabeled as a cross-claim could be treated as a compulsory counter claim if the facts show that a compulsory counterclaim is the proper claim. *Kwong v. Occidental Life Ins. Co.*, 273 F.2d 691, 693 (5th Cir. 1959).

¶42. The purpose of a counterclaim pursuant to M.R.C.P. 13 is to grant the court broad discretion to allow claims to be joined for the resolution of all controversies between the parties in one suit and to eliminate the inordinate expense occasioned by multiple litigation. *See* M.R.C.P. 13 cmt.; *See also* ***Magee v. Griffin***, 345 So. 2d 1027, 1032 (Miss. 1977).

¶43. If the confirmation of title as well as other relief sought by Hearn in his counterclaim "would only serve to cloud the issue rather than promote judicial economy and do complete justice", then the chancery court could have ordered a separate trial pursuant to M.R.C.P. 42. Otherwise, to dismiss a counterclaim is tantamount to the dismissal of any other action.

¶44. The Autumn Woods lot owners are not necessary parties for Hearn's counterclaim for confirmation of title. Miss. Code Ann. § 11-17-19 (Supp. 1999)[1] states:

> Any person, firm or corporation which claims title to or a leasehold or other interest in any real property, other than sixteenth section school lands or lands granted in lieu thereof, under or by virtue of a sale, conveyance or lease of such property by any county, municipality, supervisor's district, or other political subdivision of the State of Mississippi, acting either separately or jointly, may proceed by sworn complaint in the chancery court of the county in which such real property, or some part thereof, is located, to have the title to or leasehold or other interest in such real property quieted and confirmed. Such action may be brought whether or not such person, firm or corporation be in possession of such real property, or whether he or it be threatened to be disturbed in such possession or not. **In such complaint, the person, firm or corporation claiming such title or leasehold or other interest shall be the party plaintiff and there shall be made defendants thereto the county, municipality or other political subdivision which sold, conveyed or leased said property, the Attorney General of the state and the district attorney of the county in which said suit is filed.** In any such suit, it shall not be necessary that the plaintiff therein deraign his title to said property.

Miss. Code Ann. § 11-17-19 (Supp. 1999) (emphasis added).

¶45. In accordance with this statute, the lot owners are not necessary defendants for a confirmation of title for Lot 7. They assert no claim of title to Lot 7. Because there is no dispute pertaining to the confirmation of title between opposing parties, the chancery court did not manifestly err in dismissing this part of Hearn's counterclaim in accordance with M.R.C.P. 13.

¶46. The other relief sought by Hearn, including the dissolution of the temporary injunction, damages for unjust and unlawful issuance of injunction, and rent or other compensation for use made of Lot 7 by Autumn Woods property owners since July 21, 1995, was not properly dismissed because there was a dispute between opposing parties. The chancery court did not have the authority to dismiss this part of the counterclaim. However, because we affirm the chancellor's decision on the underlying claim the error by the chancery court, is harmless.

**IV**.

¶47. Autumn Woods cross appeals arguing that the chancery court erred in denying them attorney fees. They argue that the necessary and reasonable expenses they incurred to avoid future invasions of their property includes the attorneys' fees and litigation costs incurred by them. In addition, Autumn Woods argue that the individual plaintiffs (lot owners) are due compensation for their inconvenience, discomfort, interference with business relationships, and the disruption of business. They cite to *City of Jackson v. Keane*, 502 So. 2d 1185, 1187 (Miss. 1987) for the proposition that plaintiffs may recover reasonable expenses incurred in an attempt to prevent future and continuing damage to their property. Autumn Woods also cite to *Keane* for the proposition that special damages such as annoyance, discomfort, or inconvenience may also be recovered.

¶48. *Keane* and *Stratford Theater, Inc. v. Town of Stratford*, 101 A.2d 279 (Conn. 1953), also cited by Autumn Woods, are cases where the plaintiffs had property damage that resulted from physical defects that would continue to cause future harm. As Autumn Woods admits, "the plaintiffs did not have a defective sewer line damaging the property, or a drainage problem to alleviate, or a retaining wall to build or tear down, or a fence to erect to prevent continuing damage to their property." However, Autumn Woods property owners suggest that attorney's fees are tantamount to those expenses required to prevent future harm of their easement rights. Denying Autumn Woods property owners and their customers access to the parking lot (Lot 7), required the plaintiffs to seek legal counsel to prevent present, continuing and future damage to their property.

¶49. The chancery court ruled that attorney's fees should not be granted to Autumn Woods because such an award would be against Hearn for asserting what he thought in good faith were his valid property rights. This Court has stated "unless a statute or contract provides for the imposition of attorney fees, they are not recoverable." *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss. 1986). When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper. *Central Bank v. Butler*, 517 So. 2d 507, 512 (Miss. 1987); *Century 21 Deep S. Properties, Ltd. v. Corson*, 612 So. 2d 359, 375 (Miss. 1992).

¶50. Attorney's fees should not be granted in this case because there is no statute or contract involved here.

**V**.

¶51. This Court adopts the rule that an easement appurtenant is not extinguished by a tax sale. While the chancery court erred in dismissing Hearn's Amended Counter Claim, Cross-Claim, and Third-Party Claim for confirmation of title and other relief, that error is harmless in light of our disposition of the central issue.

¶52. Accordingly, the judgment of the Hinds County Chancery Court is affirmed.

¶53. **AFFIRMED.**

> **PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**

1. Confirmation of title or interests granted by political subdivision. Miss. Code Ann. § 11-17-19 (Supp. 1999).