LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. On August 2,1996, Effort Alexander purchased five lots in the Buena Vista Subdivision in DeSoto County. Alexander purchased the land through a tax forfeiture. On November 9, 1999, the Buena Vista Lake Maintenance Association (BVLMA) placed a lis pendes notice against Alexander’s lots for non-payment of association assessments. In August 2000, Alexander sought a permanent injunction against BVLMA and Dale Ward-low, BVLMA president, desiring to prohibit the association from placing liens against his lots. Alexander also demanded actual and punitive damages. The BVLMA and Wardlow answered and filed a counterclaim seeking to enforce the liens against the property. Alexander timely answered the counter-claim, and BVLMA and Ward-low subsequently filed a motion for summary judgment. On November 26, 2002, the county court granted BVLMA’s motion and issued a judgment against Alexander in the amount of $2,250.39, plus court costs. The trial court further ruled that title would vest in the Chancery Clerk of DeSoto County and that the lands would be sold at public auction on January 24, 2003. Appellant filed a motion to set aside the summary judgment, then filed an amended motion to set aside the summary *1143 judgment and a notice of appeal. On December 6, 2002, Alexander filed a motion for judgment notwithstanding the verdict, which the trial court denied. On December 26, 2002, Alexander filed his motion for appeal and a motion to stay the judicial sale pending the appeal. The court did not take up the motion to stay the sale of the property, and the property was sold on January 24, 2003, for $3,500. Alexander then appealed to the circuit court, which affirmed the county court. It is from these rulings that Alexander now appeals.
STANDARD OF REVIEW
¶2. This Court applies a de novo standard of review to a grant or denial of summary judgment by the lower court. Lake Castle Lot Owners Ass’n v. Litsinger, 868 So.2d 377, 379(¶ 10) (Miss.Ct.App.2004). Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. McCary v. Wade, 861 So.2d 358, 360(¶ 6) (Miss.Ct.App.2003). If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in the mov-ant’s favor. Id.
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT FOR BVLMA?
II. DOES A COVENANT WHICH RUNS WITH THE LAND PROVIDE IMPLIED CONSENT FOR ASSESSMENT OF HOMEOWNERS ASSOCIATION DUES AND THEREFORE GOVERN THE REMEDY FOR FAILURE TO PAY SUCH ASSESSMENT?
IV. MAY A HOMEOWNERS ASSOCIATION MAKE ASSESSMENTS WHEN SUCH ASSESSMENTS ARE NOT STIPULATED IN THE ASSOCIATION’S BYLAWS, CHARTER AND/OR RESOLUTION?
¶ 3. Alexander’s first, second and fourth issues are interrelated as they all address the power of a homeowners association to charge assessments and exact remedies when the remedy is not expressly included in the association’s charter; therefore, we will address these issues together.
¶ 4. Alexander argues that a genuine issue of material fact existed to substantiate the fact that the BVMLA did not have the corporate power to take a lien and subsequently foreclose against the property for non-payment of the assessments. The BVLMA and Wardlow argue that the association is a valid entity with the authority to enforce restrictive covenants of the subdivision and collect maintenance dues for the care of the subdivision’s common area.
¶ 5. Restrictive covenants have been interpreted by our supreme court to be “covenants running with the land and enforceable not only between the original parties, but also upon subsequent owners of the realty.” Perry v. Bridgetown Comty. Ass’n, 486 So.2d 1230, 1231-32 (Miss.1986) (citing William W. Bond, Jr. & Assoc., Inc. v. Lake O’The Hills Maintenance Ass’n, 381 So.2d 1043 (Miss.1980); Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958)). Bond v. Lake O’The Hills is instructive in our determination whether language from the deeds of the land in the case sub judice constitutes a covenant running with the land. In Bond a maintenance association filed suit against landowners for failure to pay annual assessments. The defendant’s deed *1144 recited that the lots were a part of the Lake O’The Hills Subdivision and subject to the restrictive covenants of the subdivision and to certain covenants, limitations, and restrictions which were to run with the land. The deed then provided that each owner was to have a membership in the Lake O’The Hills Maintenance Association, a non-profit corporation, which was created for the purpose of maintaining the lake, dam site, drives and other common areas. Each member was subject to an annual assessment by the Association for the maintenance of the dam, dam site, lake and other common areas in the subdivision of which the property was a part. The deed further provided that any unpaid annual assessment would constitute a lien on the property collectible by an action at law or by a proceeding in equity. Citing Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958), our supreme court affirmed the chancellor’s decision that “the annual assessment for the stated purposes was a covenant running with the land.” Bond at 1044.
¶ 6. We next look to the language of the deeds for the land at issue in the case sub judice. Each of the warranty deeds for the lands in question contain the following pertinent provisions:
The hereinabove described lot is conveyed subject to restrictive covenants of said subdivision as set out on said plat of said subdivision ... and further subject to the following covenants, limitations, and restrictions which are to run with the land ...
Each owner, corporate or otherwise, of any interest in land in the Buena Vista Lakes Subdivision shall have a membership in the Buena Vista Lakes Maintenance Association, a non-profit corporation created for the purpose of owning and maintaining the lake, dam site, drives, and other common areas, which membership is subject to the bylaws and other rules and regulations thereof ...
The property herein conveyed is subject to an assessment by the Buena Vista Lakes Maintenance Association on an annual basis, when same is assessed and thereafter for the same amount annually until changed by a majority of the total votes eligible to be cast by the members of the association, such amounts to be used only for the maintenance of the lake, dam, dam site, drives and other common areas. Said assessments shall be due and payable as the Board of Directors shall determine, and if not so paid shall bear interest at the rate of 6% per annum from the due date until paid; such assessments shall be a lien on the property so assessed and collectible by proper action at law, or proceeding in Chancery, for enforcement of such lien.
Remarkably, this language is almost identical to the language used in the deeds in Bond to establish a covenant which runs with the land. It is clear, then, that as the language in Bond created a covenant which runs with the land, so, too, does the above language.
¶ 7. We next address Alexander’s contention that this covenant running with the land does not imply consent for the association to place a lien on the land despite language in the association’s charter which addresses the remedy for failure to pay the assessment.
¶ 8. Homeowners associations are established to oversee the enforcement of covenants. In Perry, the supreme court noted that homeowners associations have two unique characteristics, the first being mandatory membership. “Upon taking title to a lot the property owner automatically becomes a member of the association and is subject to the obligations of mem *1145 bership and enforcement of the covenants.” Perry, 486 So.2d at 1233 (citing W. Hyatt, Condominium and Homeowners Association Practice: Community Association Law 35 (1981)). The second unique characteristic of a homeowners association is the association’s power to control the use and enjoyment of the property. Id. In the case sub judice, these powers were granted to the BVLMA in its initial resolution and charter of 1968.
¶ 9. In Perry, members of a homeowners association filed suit against the association, arguing that the association was acting in violation of its bylaws and charter allowing a remedy other than expulsion for the nonpayment of dues. Our supreme court determined that “[a] landowner who wilfully purchases property subject to the control of the association and derives benefits from membership in the association implies his consent to be charged assessments and dues common to all members.” Id. at 1234. Reviewing the language of the covenant, the court determined that the covenant clearly contemplated the requirement of assessing dues for reasonable maintenance of the common areas in the development. Id. The court further held, “in a community association, the members enjoy the benefits of the development; the landowners thereby imply consent to the assessment for reasonable maintenance common to all other members.” Id. Considering the language of the covenant before this Court as recited in paragraph six of this opinion, it is obvious that the covenants clearly contemplated the necessity of dues paid by the association members. Each of the warranty deeds for the lands in question contains language that clearly establishes that each person who purchases land in the Buena Vista Lakes Subdivision becomes a member in the BVLMA, that dues are assessed to the members on an annual basis for the purpose of maintaining the common areas of the subdivision, and that BVLMA may place a lien on the land and seek a remedy at law or in equity for the non-payment of the assessments.
¶ 10. It is clear that these covenants place the purchaser of the land on actual notice that purchasing the land begets a membership in the BVLMA, members of the BVLMA must pay association dues as they are assessed, and the dues are for the maintenance needs of the BVLMA. Under Perry, by purchasing the land, Alexander has consented to paying these dues, and he has further consented to enforcement of these dues by lien and a proper action at law or in equity to enforce the lien. Accordingly, Alexander’s arguments under these issues lack merit.
¶ 11. Curiously, neither party broached the case of City of Jackson v. Ashley, 189 Miss. 818, 199 So. 91 (1940). Similar to the case sub judice, Ashley purchased a lot at a tax sale. The lot was part of a subdivision with covenants providing, among other things, a minimum value for improvements placed on the property. Ashley applied to the city of Jackson for a building permit which the city refused to grant because the building Ashley sought to build was less than the minimum value required by the subdivision’s covenants. Our Supreme Court determined that the tax sale severed the covenants because the deed transferring ownership vested a perfect title in the purchaser.[1] “If it be said that the limitation is a property right reserved by the *1146 remote grantor, as in this case, and that it cannot be deprived of it without due process of law, then, to that extent, our statute granting perfect title would be nugatory.” Id. at 92. The court continued to say that “the negative limitation contained in the deed of the remote vendor was extinguished by the valid assessment and valid sale of the land in its entirety for taxes.” Id. at 93. Thus, Ashley stands for the proposition that the restrictive covenants were cut off at the tax sale.
¶ 12. In 1999, our Supreme Court distinguished Ashley in Hearn v. Autumn Woods Office Park Property Owners Ass’n, 757 So.2d 155 (Miss.1999). In Hearn, the defendant purchased his land at a tax sale. The homeowners association filed suit against Hearn to enforce certain covenants and easements, specifically a provision in the neighborhood covenants which granted other landowners the rights of ingress and egress, including parking, over Hearn’s land. The supreme court reviewed law from many jurisdictions on the matter, including Engel v. Catucci, 197 F.2d 597, 599 (D.C.Cir.1952), which determined:
The reasoning of the authorities holding that the easement survives the tax deed is, briefly, that when an easement is appurtenant to a dominant estate it attaches to that estate, being carved out of the servient estate; that the value of the dominant estate is increased by the existence of the easement and in effect thus includes the value of the easement; that, when a tax is paid upon the value of the dominant estate determined in this manner, a tax has in effect been paid upon the easement; that the tax upon the servient estate is upon a value lessened because of the existence of the easement; that a sale for nonpayment of that tax ought to be a sale of the lessened estate; that ‘account can be taken of an easement appurtenant without increasing the complication of the tax process’; and that therefore a tax sale of a servient estate should pass title to that estate subject to the easement.
Hearn at 160(¶26) (citing Engel, supra, footnotes omitted & quoting Restatement, Property § 509, Comment d). Our supreme court concluded that the reasoning of the D.C. Circuit was sound, and that the tax sale did not sever the easement. The court also concluded that Ashley was limited only to “negative limitations,” therefore it did not apply, and the tax sale did not sever the restrictions.
¶ 13. Our ruling in this case is consistent with the law and rationale expressed in Ashley and Hearn, for like the easements in Hearn, the covenants sub judice increase the value of Alexander’s land, and were therefore included in the value of the land when the taxes were levied. The assessments are used for the maintenance of the common areas and the maintenance of the BVLMA development, and the assessments clearly add to the value of the land, thereby benefiting the owner.
¶ 14. Accordingly, issues I, II, and IV are without merit.
III. WHEN THE CHARTER AND BYLAWS FOR A HOMEOWNERS ASSOCIATION ARE SILENT, DOES MISS. CODE ANN. SEC. 79-11-189 GOVERN THE REMEDIES AVAILABLE TO THE ASSOCIATION FOR A LANDOWNERS FAILURE TO PAY DUES TO THE ASSOCIATION?
¶ 15. Alexander argues that Mississippi Code Annotated Section 79-11-189 should control the remedies available to the BVLMA for his failure to pay the association’s assessments. In sum, this section provides that members of a nonprofit corporation shall not be expelled except pursuant to a process that is fair and reasonable and carried out in good faith. The statute outlines that a proce *1147 dure is considered fair and reasonable when either (a) the articles or bylaws provide a procedure for notice and the opportunity for the offending party to be heard or (b) “[i]t is fair and reasonable taking into consideration all of the relevant facts and circumstances.” Miss.Code. Ann. Sec. 79-11-189 (Rev.2001). Admittedly, this sub-part creates a loophole wider than a barn door, but considering the relevant facts and circumstances, Alexander was afforded a fair and reasonable opportunity to contest the association dues. We remind Alexander that he instigated the litigation by suing the BVLMA for placing a lis pendis notice on his land. Alexander received notice of the motion for summary judgment, and he received notice of the hearing on the motion for summary judgment a hearing he did not attend. Alexander’s argument lacks merit.
V. DID THE COURT ORDER GRANTING JUDGMENT IN THE AMOUNT OF $2,250.39 VIOLATE BOND?
¶ 16. As his last assignment of error, Alexander argues that the judgment for the amount of $2,250.39 violates Bond v. Lake O’The Hills because the BVLMA and Wardlow sought $1,419.81 in dues plus interest and costs, yet the trial court did not specify why the judgment was for $830.58 more than the past dues. BVLMA and Wardlow argue that Jackie Ingle, secretary of BVLMA testified as to the exact amount owed to the association by Alexander for the non-payment of dues, including the 6% interest rate stipulated in the deeds.
¶ 17. In Bond, a homeowners association brought a suit to enforce a lien against certain lots in the subdivision. The chancellor determined that the landowners were obligated to pay the dues, and placed a lien against the delinquent property. The decree did not specify the amount of the lien, nor did the decree specify whether the court impressed the lien only for the amount of the homeowners assessment or whether penalty and interest were included. The Mississippi Supreme Court reversed because the decree did not “set forth with reasonable certainty the amount of the hen assessed against the property of the defendant.” Bond, 381 So.2d at 1046.
¶ 18. In the case sub judice, the court clearly stated in its order that “a [j]udgment against Effort Alexander should be rendered awarding the Association $2,250.39 plus costs of [cjourt for lots 30, 180, and 261, in Buena Vista Lakes Maintenance Association.” The court determined this amount from Ingel’s testimony at the hearing on the motion for summary judgment. There is no ambiguity in the court’s order, and the order complies with the specificity required by the supreme court in Bond. Accordingly, this issue lacks merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. The court refers to sales of land pursuant to Section 3273, which vests perfect title. This section is presently Miss.Code Ann. Sec. 27-45-23 (Rev.2002), titled "Conveyances to purchasers at tax sales.” This section outlines the substance of the conveyance to the purchaser at a tax sale.