# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00767-COA

**LOBLOLLY PROPERTIES LLC** APPELLANT

**v.**

**LE PAPILLON HOMEOWNER'S ASSOCIATION INC.** APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/2021 |
| TRIAL JUDGE: | HON. SHEILA HAVARD SMALLWOOD |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH MICHAEL GIANOLA JR. |
| ATTORNEYS FOR APPELLEE: | CAREY R. VARNADO |
| | MATTHEW WILLIAM LAWRENCE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/27/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Loblolly Properties LLC (Loblolly) appeals the Lamar County Chancery Court's grant of summary judgment in favor of Le Papillon Homeowner's Association Inc. (HOA) in a dispute over the enforcement of restrictive covenants on lots Loblolly purchased after a foreclosure sale. On appeal, Loblolly argues that the restrictive covenants were unenforceable because they were extinguished by the foreclosure sale. HOA counters that the covenants ran with the land and that Loblolly purchased the lots by a special warranty deed that specifically stated the lots were purchased subject to the restrictions of record. Having considered the arguments of the parties and relevant precedent, we affirm the

chancery court's judgment.

**Facts**

¶2. Loblolly owned nine lots in Le Papillon Subdivision in Lamar County that Loblolly purchased from First State Bank (First State) after First State had acquired them through foreclosure. Loblolly was assessed homeowner dues by HOA, which Loblolly refused to pay. It felt its lots were not subject to the restrictive covenants that were imposed after the initial deed of trust and required payment of such dues. To understand Loblolly's position, we review the history of the transfers of the properties and the creation of the restrictions.

¶3. The Chattel Group LLC (Chattel) initially owned and platted thirty-five lots in Phase V of Le Papillon Subdivision. On March 10, 2008, Chattel executed a deed of trust to First State and pledged twenty-two of its lots as security, including Lots 108-126, 129, 131 and 132. When the property was given by Chattel to secure the deed of trust, the lots were not subject to any restrictive covenants. In the deed of trust, Chattel retained the "right to remain in possession and control of the property. . . [and] use, operate or manage the property."

¶4. Thereafter, on December 19, 2008, Chattel filed a "Declaration of Covenants, Conditions and Restrictions" with the chancery clerk's office. The declaration covered all thirty-five of the lots Chattel owned, including the lots pledged as security to First State, as noted by the plat attached to the declaration. The declaration included numerous provisions, including HOA's rights to levy fees for the use of the common areas such as streets, roads, and parking areas, and to levy assessments for the upkeep of the subdivision. According to the covenants, non-payment of fees would become a continuing lien on the property. The

2

only properties exempt from the covenants were properties dedicated to public use by the local public authority and areas unplatted or reserved by Chattel on its recorded plat of the property. According to Article XIII of the declaration, the covenants ran with and were bound the land for thirty-five years, and thereafter they were automatically renewed every ten years unless abolished by an instrument signed by a majority of the owners of record. Moreover, during the first thirty-five years they were in effect, the covenants could be amended with the agreement of ninety percent of the affected property owners; thereafter, only a seventy-five percent approval was needed.

¶5. After Chattel failed to comply with the terms of the March 2008 deed of trust, on February 6, 2009, First State foreclosed on the lots pledged to it. The trustee executed a trustee's deed, which conveyed the twenty-two lots to First State.

¶6. Four years later in 2013, prior to the lawsuit at hand, First State sued HOA regarding the validity of the covenants in a different chancery-court action. The record does not contain the specific allegations in that lawsuit, but in an order dealing with joinder of parties in that litigation, which does appear in the record, the chancery court stated:

> A primary issue in dispute before the Court is the applicability or inapplicability of the Declaration of Covenants, Conditions and Restrictions for phase V of LePapillon Subdivision . . . .to Plaintiff's (First State) property consisting of 18 lots situated therein.

The record in this case does include the December 19, 2014 agreed final judgment incorporating the parties' settlement of the suit. In that judgment, the chancery court held that the 2008 "Declaration of Covenants, Conditions and Restrictions" was properly filed and that its provisions were "valid and enforceable in each and every respect, on the real property

3

and its improvements." In compliance with the agreed order, First State began paying its HOA dues on the lots.[1]

¶7.    Several years later, on January 31, 2018, First State sold Loblolly ten of the lots it had acquired in the foreclosure sale, and owned at the time of the settlement of its lawsuit regarding the coverage of the Declaration of Covenants, including lots 109-113, 119-121, 124, and 131.  The "Special Warranty Deed" conveying title to Loblolly was prepared by Loblolly's attorney and specifically provided that "this conveyance and the warranty hereof is subject to any and all Covenants and Restrictions of record."

¶8.    Although Loblolly said that it was not aware of any covenants or restrictions binding the lots when it purchased them, on January 29, 2019, Loblolly sent HOA a $2,500 check for dues on nine house lots.  In March 2019, HOA wrote Loblolly's attorney and returned the $2,500 check because it did not cover the full amount of dues owed.  (The amount owed was $4,500 if paid by April 19 or $4,725 if paid by May 1.)  On May 22, 2019, Loblolly's attorney responded that after researching the matter, it was his opinion that when First State foreclosed, the title acquired related back to the date of the mortgage, thereby extinguishing the covenants that were filed after the mortgage.  He informed HOA's attorney that he felt Loblolly had no obligation to comply with any of the covenants or pay any dues assessed. Thereafter, on July 19, 2019, HOA filed a notice of lien against Loblolly's properties for

---

[1] In later correspondence, dated March 8, 2017, HOA's vice president sent First State a revised invoice of the dues owed saying that according to the settlement agreement, First State owed only seventy-five percent of the dues because First State owned eight or less lots.

4

$4,500 in unpaid HOA dues.[2]  These interactions resulted in the present lawsuit.

¶9.    On December 31, 2019, Loblolly filed a complaint in the Lamar County Chancery Court against HOA to void the lien and for slander of title.  Loblolly sought a declaratory judgment that would set aside the notice of lien and declare that the covenants and restrictions did not bind Loblolly's lots.  It further alleged that HOA had maliciously and/or intentionally filed the notice of lien without authority to do so, disparaging Loblolly's title to the lots.  Loblolly sought compensatory damages, punitive, and attorney's fees.

¶10.    HOA filed a motion to dismiss pursuant to Rule 12(b) of the Mississippi Rules of Civil Procedure, arguing that the complaint had failed to state a claim for relief.  After hearing the parties' arguments, the chancery court denied the motion to dismiss, finding that Loblolly had raised sufficient facts and legal authority to support the pleadings and prevent dismissal.

¶11.    On July 15, 2020, Loblolly filed a motion for partial summary judgment, arguing that the foreclosure on the lots had extinguished the covenants binding them.  HOA responded that the wording of the special warranty deed conveying the property to Loblolly should control and that the lots were subject to the covenants.  HOA also referred to the agreed judgment dismissing the prior lawsuit between First State and HOA in which the parties agreed that the covenants and restrictions did apply to the properties that First State acquired through the foreclosure.

¶12.    After a hearing, on January 25, 2021, the chancery court denied Loblolly's motion for

---

[2] In February 2020, HOA sent Loblolly another invoice for the dues for 2020 and the past-due amount from 2019, totaling $9,450.

partial summary judgment, finding that although the covenants may have been extinguished by the foreclosure, the clause in the special warranty deed clearly conveyed the property subject to the covenants and restrictions that were on record at the time.

¶13. After the chancery court's ruling, on April 19, 2021, HOA filed its own motion for summary judgment, arguing that Loblolly's lots were subject to the covenants and restrictions based on the language of the special warranty deed. Loblolly responded, and on June 24, 2021, the chancery court granted HOA's motion for summary judgment. The court found that HOA was entitled to summary judgment "for the reasons stated in the Court's prior Order . . . entered herein on January 25, 2021." The chancery court denied Loblolly's request for attorney's fees. On July 8, 2021, Loblolly appealed.

¶14. Loblolly raises two issues on appeal: whether the covenants and restrictions were no longer "of record" after the foreclosure and not binding, despite the language of the special warranty deed and whether First State's foreclosure on the lots extinguished Chattel's covenants and restrictions.

**Standard of Review**

¶15. Mississippi Rule of Civil Procedure 56(c) provides that a trial court should grant a motion for summary judgment if the pleadings and responses to discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court reviews any order granting or denying summary judgment de novo. *Alexander v. Wardlow*, 910 So. 2d 1141, 1143 (¶2) (Miss. Ct. App. 2005). In this case, neither party argues that there were any material facts in dispute, but each claims that

6

it is entitled to judgment as a matter of law.

## Discussion

### I. Whether the Loblolly lots were subject to the covenants because of the Special Warranty Deed.

¶16. When the chancery court granted HOA's motion for summary judgment, the court adopted the reasoning in its prior order denying partial summary judgment to Loblolly. In that prior order, the chancery court acknowledged that the covenants that post-dated the deed of trust could have been extinguished by the subsequent foreclosure. However, it found that the covenants and restrictions were enforceable because the language in Loblolly's special warranty deed specifically stated that the conveyance was subject to any and all covenants and restrictions of record. We agree.

¶17. Although Loblolly cites *Hudson v. Bank of Edwards*, 469 So. 2d 1234, 1238 (Miss. 1985) for the proposition that a second mortgage is extinguished by the foreclosure by the senior mortgagee,[3] this principle does not resolve the issue in this case, namely whether the covenants applied to Loblolly's lots because First State agreed in post-foreclosure litigation that the covenants applied, and Loblolly accepted the property by a special warranty deed that

---

[3] In that case, the Bank of Edwards, which held a second mortgage on property, purchased the property from the Crystals, who had purchased it at the first mortgagee's foreclosure sale. *Hudson*, 469 So. 2d at 1237. The Bank sought possession of the property but the owner in possession Hudson denied the validity of the foreclosure sale. *Id*. The chancery court granted summary judgment in favor of the bank, and Hudson appealed. *Id*. On appeal, the supreme court pointed out that the bank could only be awarded possession of what it had title to. *Id*. at 1238. The Court noted that the Bank's second mortgage was extinguished by the foreclosure of the senior mortgage; thus. the Bank could only claim title by the deed it obtained from the Crystals. *Id*. Notably, this case dealt with mortgages, not covenants.

specifically stated the property was bound by any covenants on record.

¶18.    It is undisputed that as a result of post-foreclosure litigation, First State agreed to bind the property to the covenants . These covenants, established by Chattel, specifically provided that they were intended to run with the land.[4] Because First State agreed after the foreclosure that these covenants, which ran with the land, applied to its property, First State's assignees were also bound.  There is ample authority that covenants that run with the land bind heirs and assigns of property.  *See Journeay v. Berry*, 953 So. 2d 1145, 1154-55 (¶21) (Miss. Ct. App. 2007) (citing *Griffin v. Tall Timbers Develop. Inc.*, 681 So. 2d 546, 550 (Miss.1996) (citing *White v. Miss. Power & Light Co.*, 196 So. 2d 343 (Miss. 1967))); *William W. Bond Jr. & Assoc. Inc. v. Lake O' The Hills Maint. Ass'n*, 381 So. 2d 1043, 1044 (Miss. 1980) (ruling that covenants for payment of annual assessments for operation of homeowners' association are covenants running with the land).

¶19.    In this case, even if the covenants did not survive the foreclosure, First State, which bought the property at the foreclosure sale, later agreed that the covenants were valid, enforceable, and bound the lots it held.  First State then sold several lots to Loblolly.[5]

---

[4] Moreover, the plat attached to the Declaration identified the lots to which the covenants applied, which included the lots Loblolly ultimately purchased.  Therefore, the Declaration was within Loblolly's chain of title.

[5] The dissent asserts HOA never argued that the issue of the covenants' application, which was established by the settlement of litigation between HOA and First State, made Loblolly also subject to the covenants under the theory of res judicata. But res judicata is not needed or applicable in this case. "The doctrine of res judicata bars a second action between the same parties on the subject matter directly involved in the prior action." *Avakian v. Wilmington Tr. Nat'l Ass'n*, 242 So. 3d 961, 969 (¶24) (Miss. Ct. App. 2018). Such  an approach would require a showing that Loblolly was in privity with First State. However, HOA did not need to raise a res judicata argument to prevail because in this case, First State

8

Moreover, the special warranty deed conveying certain lots to Loblolly specifically stated that the lots were taken subject to the restrictions on record. The referenced record restrictions were those Chattel filed in 2008, which First State litigated and then agreed were enforceable.[6]

¶20.    Although Loblolly claims it had no notice of the restrictions because the agreed judgment was not recorded,[7] the original declarations clearly were on record with the chancery clerk for all to see. Instruments properly recorded give constructive notice to all who deal with property. *McCorkle v. Loumiss Timber Co.*, 760 So. 2d 845, 851 (¶23) (Miss. Ct. App. 2000). Moreover, the reference in the special warranty deed to the covenants "of record" notified Loblolly that the covenants could be found had it investigated further.

The rule is, that whatever will put a party upon inquiry, which, if pursued with

conveyed the property to Loblolly with a specific reference in the special warranty deed that the property was subject to the covenants of record. This is not a case concerning whether a prior judgment bound Loblolly. Rather, it is a simple case of enforcing the plain language in a deed that reflects First State's acknowledgment of its prior agreement that the covenants bound the property.

[6] The dissent agrees with Loblolly that there were no covenants or restrictions "of record" that bound First State's lots because they were extinguished by the foreclosure. Therefore, the dissent argues there was nothing to revive by the special warranty deed. However, this reasoning ignores the intervening litigation between HOA and First State in which First State specifically agreed that its lots were bound by the covenants, which did "revive" the covenants for all intents and purposes.

[7] The dissent asserts that the county land records "showed that the Covenants were subordinate to the Deed of Trust. . . ." However, the county records merely reflect the items filed (the deed of trust, the covenants, and the trustee's deed) and the dates they were filed. Although the records show that the covenants were filed after the Deed of Trust, whether they were extinguished by the foreclosure is a legal question this appellate opinion is considering. A mere title search obviously is insufficient to reach a conclusion one way or another.

ordinary diligence and understanding, would lead to knowledge of the requisite fact, is notice of it. *McLeod v. First Nat. Bank*, 42 Miss., 112. A subsequent purchaser or creditor, about to deal with the property, if they have notice of a prior claim or equity, or of facts, which, if followed up, will discover the truth, are put under a duty to make the investigation; and if they fail to do so, are chargeable with knowledge which the inquiry would have disclosed. *Parker v. Foy & Florer*, 43 Miss., 260.

*Buck v. Paine*, 50 Miss. 648, 655 (1874). This principle still applies. Contrary to the dissent, which would hold that Loblolly had no obligation to look beyond its own chain of title, the Mississippi Supreme Court held in *Bedford v. Kravis*, 622 So. 2d 291, 295 (Miss. 1993), that when acquiring property,

> [a] purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor-either immediate or remote-if such deeds or conveyances in any way affect his title. And if any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all facts which could and would be disclosed by a diligent and careful investigation.

In this case, the special warranty deed specifically provided that the property was subject to the covenants of record. Thus, Loblolly was required to investigate further if it was unsure what that provision meant.[8]

---

[8] The dissent points out that deeds can recite the book and page numbers of any recorded covenants and that Loblolly's deed did not. However, such a recitation is not required for the covenants to nonetheless be binding. In fact, we have affirmed the enforcement of a restrictive covenant even when it was not recited in a landowner's deed at all. *Robertson v. Catalanotto*, 205 So. 3d 666, 675 (¶30) (Miss. Ct. App. 2016). In that case, the landowners argued that when they bought their property, they had been told that the restrictive covenants had expired and their deed failed to mention any restrictive covenants. *Id*. at 670 (¶4). The covenant at issue stated that "these restrictive covenants run

¶21.    Deeds are construed like contracts. *Wicker v. Havey*, 937 So. 2d 983, 991 (¶22) (Miss. Ct. App. 2006). In construing instruments of conveyance, "it is necessary under well recognized rules of construction that they be considered as a whole, and the intent of the parties be gathered from the plain and unambiguous language contained therein." *Church of God Pentecostal Inc. v. Freewill Pentecostal Church of God Inc.*, 716 So. 2d 200, 209 (¶32) (Miss. 1998) (quoting *Whittington v. Whittington*, 608 So. 2d 1274, 1278 (Miss. 1992)). To determine the parties' intent, we look first to the "four corners" of the deed to see if the language is clear and unambiguous, and if so, no further analysis is needed. *Cent. Healthcare Servs. P.A. v. Citizens Bank of Philadelphia*, 12 So. 3d 1159, 1166 (¶15) (Miss. Ct. App. 2009). "Clear, unambiguous instruments must be construed as written." *Church of God Pentecostal Inc.*, 716 So. 2d at 209 (¶32).

> In construing instruments of conveyance, "it is necessary under well recognized rules of construction that they be considered as a whole, and the intent of the parties be gathered from the plain and unambiguous language contained therein." *Rogers v. Morgan*, 250 Miss. 9, 21, 164 So. 2d 480, 484 (1964). "The meaning of the language and intention of the parties to be determined by the Court is to be found in the language used in the instrument." *Id.*; *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990); *see also Simmons v. Bank of Mississippi*, 593 So. 2d 40, 42-43 (Miss.1992) [(I)n construing written instruments, "our concern is not nearly so much what the parties may have intended as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with

with the land, but after January 1,1990, may be changed by unanimous consent in writing of the owners." *Id*. at 669 (¶3). The chancery court held that it was "immaterial" whether the restrictive covenants were included in the deed "since covenants that run with the land are enforceable against a subsequent owner, even if the subsequent owner's deed fails to reference the covenant." *Id*. at 671 (¶14). We approved the chancery court's findings, and held "we further acknowledge that a covenant that runs with the land is not void merely because it is not referred to any deed conveyed to subsequent owners." *Id*. at 674 (¶26) (internal quotation marks omitted).

11

fairness and accuracy[.]" [(quoting] *UHS-Qualicare v. Gulf Coast Comm. Hosp.*, 525 So. 2d 746, 754 (Miss.1987)[))].  Clear, unambiguous instruments must be construed as written. *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss.1987). Courts must ascertain the meaning of the language actually used, and not "some possible but unexpressed intent of the parties." *Simmons*, 593 So. 2d at 42-43[(]quoting *Cherry*, 501 So. 2d at 416[)].  The parties obviously disagree over that meaning, but that fact alone does not render the instruments ambiguous.  *Id*.

*Whittington v. Whittington*, 608 So. 2d 1274, 1278 (Miss. 1992).[9]

¶22.    The dissent further asserts that Loblolly had no notice of the applicability of covenants because the actual 2014 settlement agreement between First State and HOA was not recorded in the land records.  The dissent also points to Loblolly's self-serving affidavit in which Loblolly claims it was not aware of the covenants or settlement until after it purchased the lots.  However, settlement agreements between parties are rarely filed in public records, and while the recording of the agreed judgment may have been useful, Loblolly still had sufficient notice by the language in the deed itself, which Loblolly's own attorney prepared, to inquire about the applicability of the covenants prior to purchase.  In addition, after its purchase, Loblolly initially submitted payment for HOA dues, acknowledging by its own actions that the covenants applied to its lots.

¶23.    In this case, the special warranty deed conveying the property from First State to Loblolly clearly and unambiguously stated that "this conveyance and the warranty hereof is subject to any and all Covenants and Restrictions of record."  Thus, First State conditioned

---

[9] "'An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity' will be enforced.'" *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶17) (Miss. 2012) (quoting *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 685 (¶58) (Miss. 2009)).

12

title to the restrictive covenants that were filed in the land records and to which was attached a plat of the lots covered. Loblolly easily could have discovered the covenants that covered the lots that it was contemplating purchasing. It is undisputed that Loblolly accepted the deed prepared by its own lawyer, and by doing so, it agreed to those conditions.[10] Moreover, as previously mentioned, Loblolly's initial tender of dues to HOA evidenced its knowledge of the covenants and their applicability to its lots. Accordingly, the chancery court did not err in finding that the terms of the special warranty deed bound Loblolly to the covenants.

## II. Whether the covenants and restrictions were extinguished upon foreclosure of the First State mortgage.

¶24. There is no reported Mississippi case determining whether a later-recorded covenant that ran with the land is extinguished by a foreclosure involving a prior deed of trust. We would prefer not to rule on such an issue of first impression when the facts in this case do not require us to do so. However, because the dissent bases its opinion, even on the first issue, on its conclusion that the foreclosure extinguished the covenants, we are compelled to respond in disagreement.

¶25. On appeal, Loblolly contends that the December 2008 declaration of covenants and restrictions did not bind the lots that had been tendered as security in the First State deed of trust, which included the lots that Loblolly subsequently purchased from First State. Loblolly first argues that Chattel could not impair the property it had given as security with a subsequently filed declaration of covenants and restrictions without First State's agreement.

---

[10] "Any ambiguities in [a] contract will be construed against the party who drafted it." *Henry v. Moore*, 9 So. 3d 1146, 1153 (¶18) (Miss. Ct. App. 2008).

13

Loblolly further contends that even if the restrictive covenants applied to the security, they were an interest junior to the First State deed of trust, which was extinguished when First State foreclosed upon Chattel's property. HOA responds that covenants that run with the land are not junior liens that can be extinguished by foreclosure.

> A. *Whether the covenants applied to the lots Chattel pledged as security to First State.*

¶26.    Before determining whether the restrictive covenants were extinguished by the foreclosure, we must first determine whether the lots pledged were encumbered by the declaration of restrictive covenants[11] that was filed after the deed of trust was executed. There is surprisingly little precedent on this issue.

¶27.    In *Merchants And Farmer's Bank v. Pool Brothers*, 140 Miss. 799, 106 So. 627, 629 (1926), the Mississippi Supreme Court established the basic principle that the holder of security must agree to any contract that may devalue the collateral given. In that case, Alford owned land with timber that he had pledged to Merchant and Farmers Bank (MFB) as security in a deed of trust. *Id*. at 628. The deed of trust contained a provision that timber could be cut by Alford upon payment of $10 per thousand feet to the bank. *Id*. Alford contracted with Pool Brothers to operate a sawmill and cut the timber. *Id*. Pool Brothers consulted with the cashier of the bank before undertaking the contract, and the cashier said to go ahead because there would be enough money realized to pay everyone, including the bank. *Id.* Several months later, Pool Brothers sued Alford and established a laborer's lien,

---

[11] Covenants, like easements, are servitudes—encumbrances to property that concern the use of the land to which they are attached. *See Seymour v. Evans*, 608 So. 2d 1141, 1146 (Miss. 1992).

14

obtained a $1,860 judgment, and sought to levy upon the lumber. *Id*. MFB foreclosed, and Pool Brothers sought to enforce its lien. *Id*. The trial-level court found for Pool Brothers, and on appeal, the Mississippi Supreme Court agreed. *Id*. The supreme court noted that the judgment had to be affirmed because MFB, through its cashier, had subordinated its deed of trust to Pool Brothers' claim under their contract. *Id*. The Court explained:

> The bank, of course, had a right under its deed of trust to refuse to waive anything, and it would be beyond the power of Alford after executing the deed of trust to make any contract without the consent of the bank which would impair its security. The bank had a right to hold its security unimpaired, and it had a right to permit the lumber to be manufactured under such conditions as it thought proper to make; and persons dealing with Alford, having notice either actual or constructive of the bank's deed of trust, would be bound by its terms and act at their peril.

*Id*. The Court found that MFB had waived its superior right. *Id*. at 629. Thus, *Merchants & Farmers Bank* established the general principle that the holder of security must agree to any action by the grantor that would diminish the value of the collateral.

¶28. This principle was reiterated in *Edwards v. Bridgetown*, 486 So. 2d 1235, 1237 (Miss. 1986), where lot owners, whose property was subject to a restrictive covenant, refused to pay association dues that were assessed pursuant to amendments to the covenants created after the lot owners' deed of trust. One of the issues presented on appeal was whether the post-deed-of-trust assessments had priority over the deed of trust so that the bank could require the property owners to pay the assessments or risk foreclosure. *Id*. at 1238. The supreme court cited *Merchants & Farmer's Bank*, stating that although the bank could waive its superior lien, a grantor cannot impair security for a loan without the bank's consent. *Id*.

¶29. Applying the general principle that the holder of security must agree to any filing that

15

would devalue the property pledged to the facts of this case, we agree that First State was certainly entitled to notice if the subsequently filed declaration of covenants had devalued the lots it had taken as security. But Loblolly presented no evidence that the covenants Chattel imposed after the deed of trust impaired the property in any way. In the deed of trust itself, Chattel retained the authority to own and manage the property, which would include declarations creating restrictive covenants. Moreover, a review of the covenants shows that for the most part they benefitted the property owners. The covenants created common areas that would be maintained by HOA, "for the benefit of the community." Thus, Chattel's failure to obtain permission from First State prior to creating the covenants did not prohibit the covenants from attaching to all of Chattel's property, including the lots given to First State as security, as the declaration specifically stated.

¶30. In addition, the covenants that attached to First State's lots ran with the land. "All covenants having to do with realty or the use thereof are either real or personal. The main distinction between the two lies in the nature of the rights they create." *Vulcan Materials Co. v. Miller*, 691 So. 2d 908, 913 (Miss. 1997). A personal covenant creates obligations between the original covenanting parties, where real covenants bind the successors in interest to land. *Id.* at 914.

> Put another way, a covenant may 'run with the land,' or may simply be a matter between the grantor and the purchaser. The distinction between covenants which run with land and covenants which are personal depends upon the purpose and effect of the covenant substantially to alter the legal rights which otherwise would flow from ownership of land and which are connected with the land.

*Id*. (citing 20 Am. Jur. 2d Covenants, Conditions, and Restrictions § 12 (1995)). To be

16

considered real and to run with the land, it must be shown that there was an intent to create such a covenant, that there was privity of estate between the person creating the covenant and the person to be burdened by it, and it must "touch and concern" the land. *Id*.; *see also Misita v. Conn*, 138 So. 3d 138, 141 (¶8) (Miss. 2014); *Perry v. Bridgetown Cmty. Ass'n Inc.*, 486 So. 2d 1230, 1232-33 (Miss. 1986).

¶31. In this case, the declarations Chattel filed specifically stated that the covenants were intended to run with the land. At the time they were created, Chattel owned the property, and the covenants described in the declaration "touched and concerned" the lots in the subdivision Chattel created. Thus, the covenants ran with the land.

> **B. Whether the covenants were extinguished by First State's foreclosure.**

¶32. As previously noted, there is no Mississippi case directly deciding whether covenants filed after a deed of trust are extinguished on foreclosure. The dissent agrees and would simply apply Mississippi law that extinguishes junior mortgages when the senior mortgage is foreclosed upon, citing out-of-state cases to support its position. However, before turning to rulings by other jurisdictions, we think the better course is to examine Mississippi law dealing with covenants first to determine if we can decide the issue based on Mississippi law.

¶33. In Mississippi, there are cases dealing with the extinguishment of covenants by tax sales in which the nature and the effect of the easement or covenants are significant factors. There are cases holding that they are extinguished if they limit or devalue the property, and there are other cases that hold they are not extinguished if they do not.

¶34. In *City of Jackson v. Ashley*, 189 Miss. 818, 199 So. 91, 93 (1940), the Mississippi

Supreme Court held that a tax sale severed a restrictive covenant because of the "negative" ownership (i.e, only white people could purchase the property) and building limitations contained in the covenant. There, the covenant in the prior deeds required that the construction of residences on the property cost a minimum of $4,000. *Id.* at 91. The supreme court concluded that this "negative limitation . . . was extinguished by the valid assessment and valid sale of the land in its entirety for taxes." *Id*. at 93. But in *Hearn v. Autumn Woods Office Park Property Owners Association*, 757 So. 2d 155, 161 (¶27) (Miss. 1999), the supreme court held that an intervening tax sale did not extinguish an easement that had increased the value of the property. In that case, the covenants had designated certain lots as common areas and granted members easements for access in and out of those lots. *Id*. at 156 (¶3).

¶35. We applied *Hearn* in *Alexander v. Wardlow*, 910 So. 2d 1141, 1142 (¶1) (Miss. Ct. App. 2005), where Alexander argued that he was not required to pay the subdivision association's assessments because the covenants were extinguished when he purchased his property at a tax sale. We cited *Hearn*, noting that the covenants, which granted rights of ingress and egress as well as parking to lot owners, enhanced the value of the property and were not severed by the tax sale. *Id*. at 1146 (¶12). Likewise, we reasoned that the easements created by the covenants "are used for the maintenance of the common areas and the maintenance of the . . . development, and the assessments clearly add to the value of the land, thereby benefitting the owner." *Id*. at (¶13). Accordingly, we held that the covenants, which ran with the land, were not extinguished by the intervening tax sale. *Id.*

18

¶36. Moreover, the *Hearn* court also noted that most jurisdictions have held that an "easement appurtenant" is not extinguished by a tax sale. *Hearn*, 757 So. 2d at 160-61 (¶25). An "easement appurtenant" is one that runs with the land. *Wisconsin Ave. Props Inc. v. First Church of Nazarene of Vicksburg*, 768 So. 2d 914, 918 (¶14) (Miss. 2000). It cannot be severed from the land to which it is appurtenant. *Id.* at (¶15) (citing J. Bruce & J. Ely, *The Law of Easements and Licenses in Land* § 9.01[2].) *Hearn* has subsequently been cited by the Mississippi Supreme Court in holding that an easement appurtenant is not extinguished by a tax sale. *Lupo v. State Dep't of Transp.*, 771 So. 2d 358, 362 (¶14) (Miss. 2000).

¶37. The dissent faults our reliance on tax-sale cases for guidance in this case. The dissent argues that at the time of a tax sale, the property sold includes the easement because the tax amount that had been assessed included the easement. However, at a foreclosure sale, the dissent says, the property sold does not include the covenants because they had been imposed after the mortgage and are extinguished by the foreclosure. But this argument relies upon the dissent's own conclusion to prove its point. In essence, this argument says that tax- sales cases are distinguishable from foreclosure cases because foreclosures extinguish later- filed covenants, which is the issue we are determining here.

¶38. The dissent also asserts that "courts do not determine the priority of encumbrances based on ad hoc, subjective judgments as to whether a particular encumbrance benefits or devalues the property." However, in the cases of *Ashley*, *Hearn*, and *Alexander*, both the supreme court and this Court have made such judgments.

¶39. Recently, in *Diamondhead Country Club and Property Owners Assoc. Inc. v. Peoples*

19

*Bank*, 296 So. 3d 651 (Miss. 2020), the supreme court addressed the survival of covenants after a foreclosure. The supreme court distinguished between real property rights and personal rights when determining if a grantor's exemption from subdivision fees applied to lots purchased after foreclosure. *Id*. at 657 (¶25). In that case, in 1970, developer Purcell established covenants on his property that required purchasers to pay HOA fees. *Id*. at 653 (¶¶3-4). In a separate agreement in 1981, Purcell and the Association agreed that while Purcell owned the property, he was exempt from the assessments, and payments would be assessed when Purcell conveyed the property to other owners. *Id*. at 654 (¶12). Purcell borrowed money from People's Bank in 2004 to purchase a jet and pledged some of the lots as collateral. *Id*. at 653 (¶3). In 2008 and 2012, Purcell borrowed additional money from Peoples Bank, pledging an additional 133 lots. *Id* at (¶5). When Purcell defaulted on his loans with Peoples Bank, it purchased Purcell's lots at the foreclosure sale and claimed it was exempt from the association's fees. *Id*. at 653 (¶6). Peoples filed suit seeking a declaration that it was exempt, and the chancery court granted summary judgment in the bank's favor. *Id*. The Association appealed, and Peoples argued that it was vested with the rights and title that its debtor Purcell had in the land at the time of the deeds of trust. *Id*. at 655 (¶15). Peoples even cited cases that have held that "purchasers at the sale under the decree to enforce that mortgage acquired the title of the land in the exact position it was in at the date of the mortgage."[12] *Id*. at 655 (¶15). Considering this argument, the supreme court stated:

> While it is true that a purchaser at foreclosure steps into the shoes of the debtor and thereby acquires the rights and interests in the mortgaged property, those

---

[12] *Bainbridge v. Woodburn*, 52 Miss. 95, 100 (1876).

rights and interests are limited to those that are conveyed by the debtor in the deed of trust *and* that are in and about the mortgaged property.

*Id.* (emphasis added). Further, the court said that real property rights travel with title through foreclosure but personal rights that belonged to the grantor did not. *Id.* at (¶16). The court explained that although covenants dealing with property can be real or personal, personal covenants are enforceable only between the original covenanting parties and did not run with the land. *Id.* at (¶17). On the other hand, if a covenant is a real covenant, it runs with the land. *Id.* at 655-56 (¶18). Examining the facts before it, the supreme court concluded that there was no evidence that Purcell intended to create a developer's exemption that would run with the land and that such exemption would need to be expressly conveyed in the deed of trust. *Id.* at 656 (¶19). The Court looked at the language of the two deeds of trust Purcell had given to People's Bank and concluded that Purcell had in fact conveyed his personal-exemption rights in one but not the other. *Id.* at 656-57 (¶¶21-22). *Diamondhead* holds that a personal covenant is extinguished by foreclosure if not included in a deed of trust, but covenants that run with the land are not. *Id.* at 656-57 (¶¶19, 22). In this case, Chattel's covenants ran with the land and had attached to First State's security prior to foreclosure. Therefore, they were not extinguished by First State's foreclosure.[13]

---

[13] The dissent asserts that *Diamondhead* is inapplicable because the covenants were created before the deeds of trust that Peoples foreclosed upon. However, in *Diamondhead*, Peoples raised the inverse of the argument that Loblolly makes here–namely, that because the developer's agreement was in place prior to the deeds of trust, it took the property at foreclosure with the agreement attached. The *Diamondhead* court rejected this argument by examining the type of interest that had attached to the land, not just the timing of the filings. *Diamondhead*, 296 So. 3d at 655-56 (¶¶18-19). *Diamondhead* is cited here for the supreme court's holding that covenants that attached to the property and run with the land survive foreclosure. *Id.* at 655-56 (¶18). In this case, the covenants Chattel established were

¶40.    Loblolly argues that the covenants in this case are merely junior interests in the property that were extinguished by a foreclosure, citing as authority *Peoples Bank and Trust Co. v. L&T Developers Inc.*, 434 So. 2d 699 (Miss. 1993).  The dissent agrees citing the same case.  However, that case did not deal with the extinguishment of restrictive covenants, but rather the priority of *monetary* liens (i.e., "junior v. senior monetary interests") held by various lienholders (a purchase-money lender versus construction lenders versus materialman's lienholders) when property is foreclosed.  *Id*. at 708.[14]    In light of

covenants that ran with the land and became attached to the lots that were pledged to First State.  Thus they survived the foreclosure.  Under the dissent's reasoning, a covenant established after a deed of trust  (even one that runs with the land) will always be extinguished and could never be revived.  Certainly the facts of this case, which include the later agreement by First South that the covenants did attach to the foreclosed property, warrant a different result than the dissent's reasoning would allow.

[14] In that case, homebuilder Bruce purchased three tracts of land for $24,000, secured by a purchase money deed of trust executed in favor of L.T.  *Id*. at 703.  Bruce then obtained financing from the Bank of Mississippi and Peoples Bank to construct homes on the property and Bruce executed deeds of trust to secure these loans to which L.T. agreed to subordinate its deed of trust.  *Id*.  Bruce, however, diverted the construction money from these projects and ultimately defaulted. *Id*. at 704.  Arick, who performed electrical, heating, and air conditioning work on the homes, filed a construction lien on the property, and Wickes Corporation, which had provided materials, filed a materialman's lien.  *Id*.  L.T. filed suit to determine which encumbrance had priority, but before any ruling, the two banks foreclosed and sold the properties to themselves for $1,000 each.  *Id*.  Thereafter, the chancery court determined the priority of the liens, first in favor of the materialman's lienholders, second in favor of the original purchase money deed of trust, and lastly to the construction-lender banks because they had failed to exercise reasonable diligence to assure that the loan funds were used as intended.  *Id*. at 702.  The Mississippi Supreme Court affirmed.  *Id*.  On appeal, the construction lenders argued that their liens were perfected first and entitled to priority and that the foreclosure extinguished all other liens to the property.  *Id*. at 707 (citing *Guar. Mortgage Co. of Nashville v. Seitz*, 367 So. 2d 438, 441 (Miss. 1979)), the supreme court held that a construction loan has priority over a materialman's lien only if the funds disbursed went into the construction or that the construction lender used reasonable diligence in seeing that they do.  *Peoples Bank*, 434 So. 2d at 707.  The Court noted that even a federal tax lien was junior to a first mortgage lien.  *Id*.  Again, *Peoples*

*Diamondhead*, it appears that the enforcement of covenants after foreclosure is determined by examining not just by the timing of their creation, but by the nature of the covenants. We ask whether the covenant is a personal or real covenant, and whether it benefits or impairs the property. Although Loblolly and the dissent cite cases from other jurisdictions that have held that later-filed covenants are extinguished by the foreclosure of a previously filed deed of trust, we need not address them because their reasoning does not encompass the type of analysis our appellate courts have made in cases dealing with the extinguishment of covenants in tax sales and the analysis of the type of covenant that *Diamondhead* requires.

¶41. We also recognize the importance of our ruling on this issue given the widespread use of covenants by those developing or living in many residential communities today. As the Comment to the Restatement (Third) of Property: Servitudes § 7.9 (updated May 2022) aptly notes:

> Appurtenant easements, restrictive covenants, and servitude imposed pursuant to a general plan of development generally enhance the utility of land in a community. Easements in gross, conservation servitude, and servitude owned by the public provide many benefits to a community and safeguard important public interests. Extinguishment of servitude on foreclosure of tax and other liens with abnormal priority may disrupt established access and utility routes, allow violation of neighborhood restrictions, and destruction of sites protected by conservation and preservation servitude. Extinguishment of covenants to pay dues and assessments, to submit architectural plans, and to comply with design guidelines and other community rules and regulations may disrupt both residential and commercial developments. Piecemeal exemption of property in general-plan developments may lead to substantial unfairness among neighbors and eventual destruction of the planned development. Extinguishment of covenants to pay for use or maintenance of easements may also cause disruption of arrangements that increase land values and reduce

*Bank* dealt with the priority of monetary liens and provides nothing about the effect of a foreclosure on restrictive covenants.

23

conflict and litigation. Extinguishment of covenants to pay for services and facilities normally provided by local government may additionally result in additional burdens on local taxpayers.

Unless it is very clear that the legislature intended that foreclosure of tax liens and other liens given special priority result in extinguishment of these types of servitude, courts should interpret the statutes to avoid that result.

¶42. In the case before us, we apply Mississippi law that involves an analysis of the nature of the covenants at issue to determine whether they survive foreclosure. Here, Chattel was allowed to retain ownership and management of its property under the terms of the deed of trust to First State. This power would include the authority to create restrictive covenants. The covenants created by Chattel in December 2008 met the criteria for being considered real covenants that Chattel intended to attach to each of the lots it was selling in the subdivision and that would bind each purchaser. "In construing covenants imposing restrictions and burdens on use of land, the language used will be read in its ordinary sense." *Griffin v. Tall Timbers Develop. Inc.*, 681 So. 2d 546, 551 (Miss. 1996). Here Chattel's declaration specifically stated that "the property is and shall be held, transferred, sold, conveyed and occupied subject to the covenants, conditions, restrictions, easements, charges and liens . . . set forth." In addition, the language of Chattel's covenants granted rights and imposed obligations on subsequent lot owners in the subdivision, and they clearly "touched and concerned" the property. Moreover, the covenants Chattel created benefitted all the property owners by creating HOA, which would maintain the public areas of the development for the benefit of the entire community. Thus, Chattell intended the covenants to run with all of its lots and to be enforceable against subsequent property owners. "Restrictive covenants have

24

been interpreted to be covenants running with the land and enforceable not only between the original parties, but also upon subsequent owners of the realty." *Perry v. Bridgetown Cmty. Ass'n Inc.*, 486 So. 2d 1230, 1232-33 (Miss. 1986).

¶43.    Because the covenants in this case were covenants that ran with the land and benefitted the property owners, they survived First State's foreclosure. Moreover, if there were any question whether the covenants attached to the lots Loblolly acquired after foreclosure, it was resolved when First State and HOA agreed in a prior settlement that they did. Thus, the lots that Loblolly subsequently purchased from First State were bound by the covenants.

**Conclusion**

¶44.    We agree with the chancery court that HOA was entitled to summary judgment. First State agreed after the foreclosure that its property was bound by the covenants. Loblolly subsequently obtained the property from First State by a special warranty deed, prepared by its own attorney, that specifically provided the conveyance was subject to restrictive covenants of record.[15] Although not necessary, given the facts of this case, we further hold that the restrictive covenants applied to Loblolly's lots and were not extinguished by First

---

[15] The dissent would remand the case to determine whether Loblolly was bound by First State's agreement in prior litigation with HOA that its lots were bound by the later-filed covenants. However, such an analysis is not necessary when for years after the settlement First State paid HOA dues and specifically stated in its special warranty deed to Loblolly that the property was bound by the covenants. This case deals with the simple issue of the enforceability of provisions in a deed, not the applicability of the doctrine of res judicata. Moreover, Loblolly had ample opportunity to inquire about the special provision in the deed or negotiate a deed without such a restriction.

State's foreclosure but ran with the land.[16]  The covenants were recorded and were referred to in Loblolly's deed.  Accordingly, we affirm the judgment of the chancery court that Loblolly's lots were bound by the declaration of covenants.

¶45.  **AFFIRMED.**

**CARLTON, P.J., AND WESTBROOKS, J., CONCUR.  BARNES, C.J., McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, LAWRENCE AND SMITH, JJ.**

**WILSON, P.J., DISSENTING:**

¶46.  This appeal should be decided based on a straightforward application of the rule that a deed of trust has priority over later-recorded encumbrances.  The Chattel Group LLC granted First State Bank a Deed of Trust *before* the Chattel Group recorded a Declaration of Covenants, Conditions, and Restrictions (the Covenants) burdening the subject properties.  Therefore, First State Bank's foreclosure pursuant to the Deed of Trust extinguished the Covenants as they related to the subject properties.  The majority opinion identifies no valid legal reason for disregarding this basic rule of priority of encumbrances.  In addition, the chancery court erred by finding that Loblolly Properties LLC "consented to" the Covenants when it acquired title to the properties by a Special Warranty Deed.  Accordingly, I would reverse the chancery court's grant of summary judgment and remand the case for further

---

[16] The dissent contends that  by our holding, there is nothing that a holder of a deed of trust can do to protect itself from a later-filed covenant.  However, in our view, under *Diamondhead*, the Mississippi Supreme Court does not determine the enforceability of covenants simply by the date of filing, as it does for junior monetary interests, but by the nature of the covenants created.

proceedings, and I respectfully dissent.

## FACTS AND PROCEDURAL HISTORY

¶47. In February 2008, The Chattel Group LLC granted First State Bank a Deed of Trust that encumbered a number of lots in the Le Papillon Subdivision in Lamar County. The Deed of Trust was filed in the Lamar County land records in March 2008.

¶48. In December 2008, the Chattel Group filed the Covenants establishing the Le Papillon Homeowners Association (HOA). The Covenants imposed numerous restrictions and requirements on lots within the subdivision, including obligations to pay annual and special assessments to the HOA.

¶49. By January 2009, the Chattel Group had defaulted under the terms of the Deed of Trust. In February 2009, a foreclosure sale was held, and First State Bank purchased the lots still encumbered by the Deed of Trust.

¶50. A dispute later arose between First State Bank and the HOA as to whether the Bank was required to pay the HOA assessments. The bank filed suit against the HOA in the Lamar County Chancery Court, arguing that the bank was not required to pay assessments because the foreclosure had extinguished the Covenants with respect to its lots. In December 2014, the chancery court dismissed the case pursuant to an "Agreed Judgment of Dismissal." The Agreed Judgment stated in part, "[T]he Court finds that the [Covenants] . . . are properly filed, indexed, recorded, and abstracted and are, therefore, valid and enforceable in each and every respect, on the real property and its improvements which said Covenants touch and concern." The dismissal was the result of a settlement agreement between the bank and the

27

HOA. The settlement agreement is not in the record, but the record suggests that the agreement provided that the bank would not be required to pay full assessments on the lots.[17]

¶51. In January 2018, First State Bank conveyed ten lots to Loblolly Properties LLC by a Special Warranty Deed. The Special Warranty Deed did not specifically reference the Covenants, but it contained a clause stating that the "conveyance . . . [was] subject to any and all Covenants and Restrictions of record."

¶52. Loblolly submitted an affidavit from one of its two members, Chris Smith, stating that when Loblolly acquired its ten lots from First State Bank, neither he nor Loblolly was aware of the Agreed Judgment of Dismissal entered in the First State Bank case. Smith also stated that at that time, neither he nor Loblolly was aware of any restrictive covenants that encumbered the properties. Smith stated that sometime *after* Loblolly acquired the lots, "[First State Bank] informed [him] that a confidential settlement agreement existed between [First State Bank] and the [HOA]."

¶53. A dispute subsequently arose between Loblolly and the HOA as to whether the Covenants obligated Loblolly to pay assessments to the HOA. As First State Bank previously argued, Loblolly contended that the foreclosure had extinguished the Covenants and refused to pay the assessments. The HOA disagreed and filed a lien for unpaid assessments. Loblolly then filed suit in the Lamar County Chancery Court, seeking to cancel

---

[17] The record includes a March 2017 letter from the treasurer of the HOA to an assistant vice president at the bank that asserted the Bank had agreed to pay assessments "at a 75% level once [the bank owned] 8 or fewer lots." It is unclear what, if any, assessments the bank was required to pay while it still owned more than eight lots. The letter also asserted that as of March 2017, the bank "own[ed] 8 lots"; however, as of January 2018, the bank still owned at least ten lots, which it conveyed to Loblolly Properties LLC.

28

the lien and obtain a declaratory judgment that the Covenants had been extinguished.

¶54. The chancellor ultimately granted summary judgment in favor of the HOA. The chancellor reasoned, "Since the covenants were filed after the Deed of Trust, the valid foreclosure could have extinguished the covenants as they applied to the lots bought by Loblolly . . . ." However, the chancellor ruled that Loblolly had "consented to" the Covenants based on language in the Special Warranty Deed it received from First State Bank—specifically, the clause stating that the "conveyance . . . [was] subject to any and all Covenants and Restrictions of record." Loblolly appealed.

## ANALYSIS

### I. The foreclosure extinguished all junior encumbrances, including the Covenants.

¶55. Applying normal priority rules, the February 2009 foreclosure extinguished the Covenants because First State Bank's Deed of Trust was recorded prior to the Covenants. The Restatement (Third) of Property: Servitudes (2000) explains that "[a] servitude is not extinguished by foreclosure of a lien against the estate burdened by the servitude *unless the lien has priority over the servitude*." *Id.* § 7.9 (emphasis added). A comment to this section of the Restatement further explains that

> [w]hether a lien-foreclosure sale extinguishes a servitude is normally determined by the priority of the interests, which, with a few exceptions, is established by priority in time of creation and the applicable recording act. . . . *Foreclosure of a lien that has priority in time or recording extinguishes the burden of the servitude and the purchaser at the foreclosure sale takes free of the servitude.* This [is] the general rule applicable to foreclosure of mortgages, deeds of trust, and other liens that follow normal priority rules.

*Id.* § 7.9 cmt. a (emphasis added). A comment to another section similarly states that

29

"[w]hether a purchaser at a foreclosure sale takes subject to the burdens of covenants depends on the priority of the lien foreclosed. *If the lien is prior to the covenant, the covenant will be foreclosed along with other junior interests.*" *Id.* § 5.2 cmt. i (emphasis added).

¶56. Courts in other states have applied this principle and held that a foreclosure extinguishes covenants filed after the underlying deed of trust. For example, in *Gray v. Shepard*, 505 S.W.3d 317 (Mo. Ct. App. 2016), Kasada Properties granted Ozark Bank a deed of trust for land it intended to develop as part of a subdivision. *Id.* at 318-19. One month later, Kasada and the subdivision's other developer filed a declaration of restrictive covenants. *Id.* at 319. Kasada later defaulted under the deed of trust, and Ozark Bank purchased the property at a foreclosure sale. *Id.* Ozark Bank then resold part of the property to Michael and Linda Gray. *Id.* In subsequent litigation with owners of other lots in the subdivision, the Grays argued that the foreclosure had extinguished the covenants with respect to their property. *Id.* The Missouri Court of Appeals agreed with the Grays, rejecting their neighbors' argument "that the restrictive covenants at issue . . . are not the type of inferior encumbrance that is extinguished by foreclosure of a senior deed of trust." *Id.* at 320. The court stated that although it could "find no Missouri case on point, case law from other jurisdictions supports [the] position that the foreclosure of a senior mortgage or deed of trust extinguishes junior covenants and equitable servitudes burdening the real property." *Id.* (collecting cases). The court also relied on sections 5.2 and 7.9 of the Restatement. *Id.* at 321. The court stated that the Restatement's principle was "consistent with Missouri law

that foreclosure of a senior deed of trust extinguishes junior interests and vests the purchaser with title as it existed on the date the foreclosed deed was recorded." *Id.*

¶57. Similarly, in *Mortgage Investors of Washington v. Moore*, 493 So. 2d 6 (Fla. Dist. Ct. App. 1986), a developer mortgaged a large parcel of property to secure payment of a promissory note to a lender (MIW). *Id.* at 7. A few months later, the developer recorded a declaration of restrictive covenants that, among other things, obligated the developer to maintain a clubhouse, pool, and other common areas until all lots in the development had been sold. *Id.* Five years later, MIW foreclosed on the mortgage and acquired title to the property, including the common areas. *Id.* After the foreclosure, individual lot owners sought to compel MIW to continue to maintain the common areas, arguing that MIW was bound by the restrictive covenants as the successor-in-interest to the developer. *Id.* Florida's Second District Court of Appeal rejected the individual lot owners' argument. *Id.* at 8-9. The court stated that although Florida law and policy favored the enforcement of properly recorded restrictive covenants, that law and policy had "no application" to the issue before the court. *Id.* at 8. The court explained that "the title . . . acquired at [a] foreclosure sale relate[s] back to the date of the mortgage." *Id.* Therefore, the foreclosure extinguished any covenants that were "not in existence" "[o]n the date the mortgage was recorded." *Id.* The court further stated that MIW "should not be deprived of a valuable potential right [it] enjoyed on the date that the mortgage was executed." *Id.* at 8-9. This was "true even though MIW may have had actual notice of the presence and use of the recreational facilities on the property on which it successfully foreclosed." *Id.* at 9. In the absence of fraud, MIW "had

31

a right to enjoy the property on which it foreclosed as it stood on the date the mortgage was executed." *Id.*

¶58.    In *Springmont Homeowners Association Inc. v. Barber*, 472 S.E.2d 695 (Ga. Ct. App. 1996), a developer gave a bank a security deed for 154 acres it intended to develop as a subdivision. *Id.* at 696. Eighteen months later, the developer recorded a declaration of covenants, conditions, restrictions, and easements for the subdivision. *Id.* The developer ultimately sold 302 lots in the subdivision, but the bank foreclosed on the remaining twenty-eight lots. *Id.* The bank later resold those lots, and a dispute arose between the buyer and the subdivision's homeowners association as to whether the covenants applied to the lots. *Id.* The Georgia Court of Appeals held that the bank's security deed had priority over the later-recorded covenants. *Id.* The court stated that although the covenants bound those lot owners who acquired their title from the developer, "it never became part of the [bank's] chain of title" because it was not recorded until after the bank's security deed. *Id.*

¶59.    In addition, as the Missouri Court of Appeals reasoned in *Gray*, the Restatement's principle "is consistent with [Mississippi] law that foreclosure of a senior deed of trust extinguishes junior interests and vests the purchaser with title as it existed on the date the foreclosed deed was recorded." *Gray*, 505 S.W.3d at 321. Under Mississippi law, a recorded "deed of trust" has priority over any later-filed encumbrance, including a "covenant." Miss. Code Ann. § 89-5-5 (Rev. 2021). As the Mississippi Supreme Court has explained,

> [o]nce properly filed for record, the deed of trust is entitled to priority according to date of filing. Upon default by debtor in performance of the

conditions of the trust, the trustee is empowered to foreclose. If the statutory requirements are observed, sale under the power is a perfect foreclosure. The trustee's deed is a conveyance absolute as though the trustee held fee simple title. It cuts off the equity of redemption and any other rights in and to the property . . . *with the sole exception of rights perfected prior to the filing of the deed of trust under which the foreclosure sale is held*.

As he executes the trustee's deed, the trustee in fact and in law possesses the same power to convey as any other person seized of title to real property. If one or more of the substantive conditions of the deed of trust have been breached substantially by the debtor/grantor, and if the trustee has complied with all of the procedural requisites (imposed by statute or by the trust deed itself), the foreclosing trustee's power to convey is as though he holds title by deed. *The priority of his deed is determined by the date on which the deed of trust was filed for record. By trustee's deed he has the exact same power to convey free and clear of junior liens or interest as though he held a deed absolute filed for record the day the deed of trust was recorded.*

*Peoples Bank & Tr. Co. v. L & T Devs. Inc.*, 434 So. 2d 699, 708 (Miss. 1983) (emphasis added) (citation omitted); *see also, e.g.*, *Shutze v. Credithrift of Am. Inc.*, 607 So. 2d 55, 65 (Miss. 1992) ("[A] valid and effective foreclosure extinguishes all subordinate rights."); K.F. Boackle, *Mississippi Real Estate Foreclosure Law* § 4:14 (2d ed. 2002) ("The foreclosure of a deed of trust cuts off the rights of lienholders and other interests junior to it.").

¶60. Thus, as a result of the foreclosure, First State Bank held title to the lots at issue "free and clear of junior liens or interest as though [it] held a deed absolute filed for record the day the deed of trust was recorded." *People's Bank & Tr. Co.*, 434 So. 2d at 708. Because the Covenants were recorded after the Deed of Trust, the Deed of Trust had priority, and the foreclosure effectively extinguished the Covenants. *Id.*

¶61. The majority opinion asserts that our normal rules of priority do not apply in this case because—in the majority's view—the Covenants at issue did not "devalue" the property but

actually "benefitted" the property. But courts do not determine the priority of encumbrances based on ad hoc, subjective judgments about whether a particular encumbrance benefits or devalues the property. Rather, priority is established based on the date on which the instruments were recorded. Miss. Code Ann. § 89-5-5. The Covenants impose an obligation to pay assessments, as well as numerous building and use restrictions and easements. The Covenants constitute a comprehensive scheme of encumbrances upon the land that simply did not exist when First State Bank obtained its deed of trust. When the bank foreclosed on the property pursuant to the Deed of Trust, the bank was entitled to take title to the property "free and clear" of any such junior encumbrances. *People's Bank & Tr. Co.*, 434 So. 2d at 708. This result is true regardless of whether the majority now thinks that, on balance, the Covenants benefit or devalue the property.

¶62. The majority also relies on cases holding that easements and covenants were not extinguished by *tax sales*. *See Hearn v. Autumn Woods Office Park Prop. Owners Ass'n*, 757 So. 2d 155, 160-61 (¶¶23-27) (Miss. 1999). This reliance is a mistake because the law treats tax sales different from foreclosures. *Compare* Jon W. Bruce & James W. Ely Jr., *The Law of Easements and Licenses in Land* § 10:39 (updated Aug. 2022) ("Under the generally accepted view, the purchaser of a servient estate at a tax sale receives title subject to existing easements appurtenant."), *with id.* § 10:41 (stating that because "[t]he purpose of foreclosure is to allow the mortgagee to realize on the security as it existed at the time the mortgage was executed," a valid foreclosure terminates all "junior easements on the servient estate"). Courts have held that a tax sale does not terminate easements that burden the property

34

because "the tax upon the servient estate is upon a value lessened because of the existence of the easement," and therefore "a sale for nonpayment of that tax ought to be a sale of the lessened estate." *Hearn*, 757 So. 2d at 161 (¶26) (quoting *Engel v. Catucci*, 197 F.2d 597, 599 (D.C. Cir. 1952)); *accord* Restatement (Third) of Property: Servitudes § 7.9 reporter's note. In contrast, a deed of trust grants the beneficiary a security interest in the property as of "the day the deed of trust was recorded," and therefore a foreclosure pursuant to the deed of trust conveys title to the property "free and clear" of any later-recorded encumbrances. *People's Bank & Tr. Co.*, 434 So. 2d at 708.

¶63. The majority also suggests that the foreclosure sale did not extinguish the Covenants because the Covenants "run with the land." But the fact that the Covenants "run with the land" does not address the question whether they were extinguished by the foreclosure pursuant to the previously recorded Deed of Trust. "Covenants which run with the land may be enforced by subsequent assignees or successors in title to the original parties." *Griffin v. Tall Timbers Dev. Inc.*, 681 So. 2d 546, 550 (Miss. 1996). But this does not mean that such covenants are afforded priority over previously recorded encumbrances. Because First State Bank's Deed of Trust was recorded prior to the Covenants, the Deed of Trust had priority over the Covenants, and the foreclosure sale extinguished the Covenants. The fact that the Covenants "run with the land" does not suspend normal priority rules.

¶64. As part of its run-with-the-land argument, the majority relies heavily on *Diamondhead County Club and Property Owners Association Inc. v. Peoples Bank*, 296 So. 3d 651 (Miss. 2020). *Ante* at ¶¶39-40 & n.13. Indeed, the majority asserts that "under *Diamondhead*, the

35

Mississippi Supreme Court does not determine the enforceability of covenants simply by the date of filing, as it does for junior monetary interests, but by the nature of the covenants created." *Ante* at n.16. The majority's reliance on *Diamondhead* is misplaced. To begin with, it is unclear what the majority means by "junior monetary interests." The legal significance of a deed of trust and the priority of a trustee's deed are discussed above and are well settled under our law. The Mississippi Supreme Court has never referred to a deed of trust as a mere "junior monetary interest," whatever that means, nor has the Supreme Court ever held that covenants are entitled to priority over a previously filed deed of trust.

¶65. Moreover, the *Diamondhead* case has absolutely nothing to do with the issue in this appeal. Indeed, quite the opposite of this case, *Diamondhead* involved subdivision covenants filed in 1970 and deeds of trust filed *decades later* in 2008 and 2012. *Diamondhead*, 296 So. 3d at 653 (¶¶3-5). The Supreme Court held that a provision in the covenants that granted the developer "an exemption from POA assessments" was "a personal right [of the developer] that would not automatically pass with title out of foreclosure" pursuant to the later-filed deeds of trust. *Id.* at 656 (¶19). The Court stated that the right could pass if it was "conveyed through the deed of trust." *Id.* After analyzing the specific language of the two deeds of trust at issue in that case, the Supreme Court held that the 2008 deed of trust conveyed the exemption as to the lots it covered, but the 2012 deed of trust did not convey the exemption as to the lots it covered. *Id.* at 656-57 (¶¶20-24). Nothing in the Court's opinion supports the majority's holding here that later-filed covenants trump prior deeds of trust. Again, to be clear, *Diamondhead* involved subdivision covenants that were filed many

36

years *before* the relevant deeds of trust.

¶66.    In summary, based on a straightforward application of Mississippi law, the Deed of Trust had priority over the later-filed Covenants.  Therefore, the foreclosure pursuant to the Deed of Trust extinguished the Covenants.  The Covenants are simply a junior encumbrance that the foreclosure extinguished.

## II.    The Special Warranty Deed did not revive the Covenants.

¶67.    In contrast with the majority's analysis, the chancellor concluded that "[s]ince the [C]ovenants were filed after the Deed of Trust, the valid foreclosure could have extinguished the [C]ovenants as they applied to the lots bought by Loblolly . . . ."  However, the chancellor then concluded that Loblolly had "consented to" the Covenants based on language in the 2018 Special Warranty Deed it received from First State Bank.  Specifically, the chancellor found that the Special Warranty Deed made the Covenants applicable to Loblolly's lots because the Deed stated, "This conveyance and the warranty hereof is subject to any and all Covenants and Restrictions of record."

¶68.    I respectfully disagree that this language was sufficient to revive Covenants that had been extinguished by foreclosure nine years earlier.  The Special Warranty Deed merely states that the lots are subject to any "Covenants and Restrictions *of record*."  (Emphasis added).  As of the date the Special Warranty Deed was executed, the county land records showed that the Covenants were subordinate to the Deed of Trust and therefore would have been extinguished by the 2009 foreclosure.  *Peoples Bank & Tr. Co.*, 434 So. 2d at 708; *Shutze*, 607 So. 2d at 65; Boackle, *Mississippi Real Estate Foreclosure Law* § 4:14.

37

Therefore, as of the date the Special Warranty Deed was executed, there were no covenants or restrictions "of record" that bound the lots at issue.[18]

### III. On the present record, the HOA is not entitled to summary judgment based on the 2014 Agreed Judgment or the related settlement agreement.

¶69. The HOA also argues that the Covenants are enforceable against Loblolly because the 2014 "settlement agreement [between First State Bank and the HOA] is enforceable not only against [First State Bank] but any subsequent purchaser of value *with notice of the* [*C*]*ovenants*." (Emphasis added). The HOA then asserts that Loblolly "no doubt had *constructive notice of the settlement agreement* and the [C]ovenants themselves." (Emphasis added). Based on the present record, there are at least three problems with this argument.

¶70. First, "constructive notice of . . . the [C]ovenants" is insufficient to bind Loblolly because, as discussed above, the county land records indicated that the Covenants were subordinate to First State Bank's Deed of Trust and therefore would have been extinguished by the 2009 foreclosure.[19] Thus, the county land records provided no "constructive notice" that the Covenants were enforceable against the lots that Loblolly purchased.

¶71. Second, the HOA fails to explain how Loblolly "had constructive notice of the

---

[18] A deed can incorporate by reference specific covenants and restrictions by designating specific book and page of the land records where the covenants and restrictions are recorded. *See* Boackle, *Mississippi Real Estate Contracts and Closings* § 6:133:7. The Special Warranty Deed did not do so.

[19] A buyer is charged with constructive notice only of those deeds and encumbrances in his chain of title. *See Jenkins v. Bates*, 230 Miss. 406, 410, 92 So. 2d 655, 657 (1957); *Barksdale v. Learnard*, 112 Miss. 861, 73 So. 736, 738 (1917). Loblolly took title from First State Bank, whose title related back to the Deed of Trust. Thus, the later-recorded Covenants were not within Loblolly's chain of title.

settlement agreement." Neither the Agreed Judgment of Dismissal of First State Bank's lawsuit nor the underlying settlement agreement between those parties was ever filed in the Lamar County land records. Thus, there is nothing in the record to suggest how Loblolly would have had "constructive notice" of the settlement agreement.[20] Indeed, as noted above, the settlement agreement is not even in the record on appeal.

¶72. Third, the HOA's argument that the "settlement agreement is enforceable . . . against . . . [Loblolly]" is simply question-begging given that the settlement agreement is not part of the record. As discussed above, it appears that the settlement agreement temporarily and/or partially waived assessments against the Bank's lots, yet the HOA has insisted that Loblolly must pay the assessments in full. Without the actual settlement agreement, there is no way to know whether it is enforceable against Loblolly or what it would require of Loblolly.

¶73. Conceivably, the HOA could argue that the 2014 Agreed Judgment of Dismissal establishes the validity of the covenants as a matter of res judicata or collateral estoppel. The Mississippi Supreme Court has held that an agreed order may have collateral estoppel effect. *See Smith v. Malouf*, 826 So. 2d 1256, 1259 (¶10) (Miss. 2002). In addition, as a successor-in-interest to First State Bank, Loblolly might be deemed "in privity" with the bank and bound by a prior judgment against the bank. *See EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1091 (¶14) (Miss. 2009). However, res judicata and collateral estoppel are affirmative defenses that must be pled. *See State ex rel. Moore v. Molpus*, 578 So. 2d 624,

---

[20] As noted above, Loblolly also submitted an affidavit from one of its two members that stated that the company was not aware of either the Covenants or the settlement agreement prior to purchasing the subject properties.

641 (Miss. 1991); *Wholey v. Cal-Maine Foods Inc.*, 530 So. 2d 136, 139 (Miss. 1988). In addition, summary judgment cannot be entered based on res judicata or collateral estoppel unless the defendant files a properly supported motion based on those grounds. *See Wholey*, 530 So. 2d at 139. Here, the HOA did not move for summary judgment based on res judicata or collateral estoppel.[21] For that reason, the parties have not addressed the preclusive effect of the prior judgment. Nor have they addressed the significance of the fact that it was an agreed judgment that was never recorded in the county land records. These may be important issues in this case, but they were not raised in the HOA's motion for summary judgment and are not before this Court on appeal.

## CONCLUSION

¶74. All that can be determined on the present record is that First State Bank's Deed of Trust had priority over the later-filed Covenants, and therefore the foreclosure pursuant to the Deed of Trust extinguished the Covenants. In the present appeal, the HOA has identified no valid legal reason for disregarding this basic rule of priority. Moreover, the holding in Part II of the majority opinion that subdivision covenants have priority over previously recorded deeds of trust is unprecedented and inconsistent with basic principles of Mississippi law. According to Part II of the majority opinion, there is nothing the beneficiary of a deed of trust can do to protect itself from such later-filed covenants. In addition, the chancery court erred by ruling as a matter of law that Loblolly "consented to" the Covenants based on

---

[21] The HOA never filed an answer to Loblolly's complaint. The HOA filed a timely motion to dismiss for failure to state a claim upon which relief could be granted. However, after the chancery court denied the HOA's motion to dismiss, the HOA failed to serve an answer within ten days, as required by Mississippi Rule of Civil Procedure 12(a)(1).

40

language in the Special Warranty Deed it received from First State Bank.

¶75.    Accordingly, I would reverse the order granting of summary judgment and remand the case for further proceedings.  Whether Loblolly is bound by the Agreed Judgment of Dismissal in the First State Bank case or by the unrecorded settlement agreement between First State Bank and the HOA are issues that should be explored on remand.  But those issues are not before us on appeal and therefore cannot provide the basis for a decision in this appeal.  For all these reasons, I respectfully dissent.

**GREENLEE, LAWRENCE AND SMITH, JJ., JOIN THIS OPINION.**